## HARWOOD v. TOMS et al., *Appellants.*

### In Banc, November 5, 1895.

1. **Parties**: ACTION TO QUIET TITLE: STATUTE. Parties defendant in a proceeding to quiet title (under sec. 2092, R. S. 1889), who do not begin action within the time prescribed by an order to do so, are thereafter barred of all claim as against plaintiff.

2. **Practice**: WAIVER. Where all parties in the trial and appellate courts treat a cause as one of equitable character, the court will assume the correctness of that view.

3. **Equity**: APPELLATE PRACTICE. In equity cases the facts are reviewable on appeal.

4. **Deeds of Trust**: ESTOPPEL : EQUITY. In a controversy between claimants through two deeds of trust, made by the same grantor, the court finds from the evidence that, at the time of sale under the first recorded deed, there was no existing indebtedness secured by that deed, although it had not been released of record. *Held*, that the claimant under the first deed, who had notice of the above facts, could not, in equity, assert title against the purchaser under the later deed of trust, which secured a valid loan.

5. ——— : SALE : EJECTMENT. Where an equitable answer to an action of ejection charges that plaintiff's claim is derived through a sale under deed of trust, and that, at the time of sale, the debt secured by the deed had been discharged, and both parties at the trial go into an inquiry as to the amount of original indebtedness secured by the deed, that question is properly open to review on appeal.

6. **Appellate Practice**: ESTOPPEL. Parties are generally to be held bound on appeal by the positions they assume in the trial court. When all parties adopt, without objection, the same construction of a pleading at the trial, it will be taken as the proper construction.

7. **Practice**: FILING BILL OF EXCEPTIONS. Where leave was given to file a bill of exceptions at the November term, and a record entry of November 23 recites that the bill was filed, while the law requires the court to begin on the second Monday of November, the bill is properly a part of the record.

8. **Circuit Court Term**: JUDICIAL NOTICE. The supreme court takes judicial notice of the statutory date fixed for the opening of the circuit court in a county of Missouri.

*Appeal from De Kalb Circuit Court.*—HON. C. H. S. GOODMAN, Judge.

REVERSED AND REMANDED.

*Lester M. Hall* and *Kendall B. Randolph* for appellant.

(1) The note and trust deed, under which respondent claims, were made to A. W. Frederick, J. T. House, and J. F. Harwood (respondent) as joint obligees. The whole transaction was repudiated by J. T. House. *Henry v. Township,* 70 Mo. 500; 1 Parsons on Contracts [6 Ed.], side paging 21 to 26; *Clark v. Cable,* 21 Mo. 223; *Ryan v. Riddle,* 78 Mo. 521; *Rainey v. Smizer,* 28 Mo. 310; *Dewey v. Carey,* 60 Mo. 224; Bishop on Contracts, sec. 875, and cases there cited. (2) Either one of the three joint obligees, Frederick, House, or Harwood, could have discharged the note and trust deed, and the others would have been bound thereby. They stood in privity to each other. "A man becomes a privy whenever he agrees to become bound by the acts of a third person." 1 Herman on Estoppel and Res Judicata, 150. (3) The money arising from the loan from H. C. Wilson & Company to John R. Oaks was paid to A. W. Fred-

erick by H. E. Glazier, agent for H. C. Wilson & Company, with the agreement that he should pay all liens against the land in controversy. This included the claim of Frederick, House, and Harwood, and constitutes payment; a payment to one of several joint obligees discharges the obligation. *Wright v. Ware*, 58 Ga. 150; *Henry v. Mt. Pleasant Twp.*, 70 Mo. 500; *Clark v. Cable*, 21 Mo. 223; *Ryan v. Riddle*, 78 Mo. 521; *Rainey v. Smizer*, 28 Mo. 310; *Dewey v. Carey*, 60 Mo. 224. (4) This also created an estoppel which operates against Frederick as well as his co-obligees. *Austin v. Loring*, 63 Mo. 19; 2 Herman on Estoppel and Res Judicata, p. 1227, sec. 1096. (5) An estoppel may be created as well by acts as words; by misleading either by silence or encouragement. *Guffey v. O'Reiley*, 88 Mo. 418; *Thistle v. Buford*, 50 Mo. 278; *Collins v. Rogers*, 63 Mo. 515; *Austin v. Loring*, 63 Mo. 19; *Campbell v. Johnson*, 44 Mo. 247; *Rice v. Bunce*, 49 Mo. 231; *Stevenson v. Saline County*, 65 Mo. 425; Bishop on Contracts, sec. 298, and cases there cited. (6) The representations by Mr. A. W. Frederick to H. E. Glazier pending the loan by H. C. Wilson & Company to John R. Oaks, and his representations to Wilson and Toms, made after Oaks had defaulted in the payment of interest, created an estoppel which extended to all the obligees in the note and trust deed under which respondent claims. *Chouteau v. Goddin*, 39 Mo. 229; *Cooley v. Warren*, 53 Mo. 166. (7) The fact that a title is of record is no justification for acts which mislead the other party. *Thistle v. Buford*, 50 Mo. 278; *Rice v. Bunce*, 49 Mo. 231, *supra*; *Olden v. Hendrick*, 100 Mo. 533; 2 Herman on Estoppel and Res Judicata, sec. 914. (8) The execution of the deed from Frederick to Oaks for the land in controversy extinguished all claims of Frederick and his co-obligees to said land; *Henry v. Mt. Pleasant Twp.*, 70 Mo.

500, *supra; Clark v. Cable,* 21 Mo. 223, *supra; Wright v. Ware,* 58 Ga. 150, *supra.* (9) Respondent can not accomplish by indirection, what he could not accomplish by direct proceedings. So long as J. T. House repudiated the note and trust deed, the respondent and A. W. Frederick, nor either of them, could have maintained an action against Oaks for the collection of the note. If they could not sue without House, neither could they collect by foreclosure. If they could not enforce payment against Oaks or against Oaks' interest in the land, they can not enforce it against Oaks' grantees. *Bailey v. Powell,* 11 Mo. 265; 1 Parsons on Contracts [6 Ed.], side paging 25 and 26. (10) In chancery cases the supreme court will go over the evidence and make findings of its own. It will not abdicate its jurisdiction by deferring to the findings of the trial court. *Benne v. Schnecko,* 100 Mo. 258; *McElroy v. Maxwell,* 101 Mo. 308; *Berlien v. Bieler,* 96 Mo. 491.

*S. S. Brown* and *Casteel & Haynes* for respondent.

(1) The evidence wholly fails to show a repudiation by House of the Rogers deed of trust. (2) Equally untenable is the contention on the part of appellants, that Frederick agreed to pay all liens against the land, and that such agreement included the debt of $2,500 secured by the deed of trust from Oaks to Rogers. (3) The fact, if true, that Glazier did not know of the Rogers deed is attributable to his own negligence, against the consequences of which a court of equity will not relieve him. *Bunn v. Lindsey,* 95 Mo. 250; *Blodgett v. Perry,* 97 Mo. 263; *Acton v. Dooley,* 74 Mo. 63; *Pasley v. Freeman,* 2 Smith's Lead. Cases, 175. (4) Appellants have no right of subrogation in this case. *Bunn v. Lindsey,* 95 Mo. 250. (5)

Harwood is not estopped on account of the alleged deed from Frederick to Oaks.

*Silver & Brown*, also, for respondent.

(1) The original existence of the debt secured in the Rogers deed of trust is not assailed in the answer. A party can not, in an equity case, succeed upon a case proved but not alleged any more than upon a case alleged and not proved. *Foster v. Goddard*, 1 Black, 506; *Grosholz v. Newman*, 21 Wall. 481; *St. Louis, etc., v. Delano*, 108 Mo. 217. (2) The defense of estoppel is not only insufficiently pleaded in the answer, but is not sustained by the evidence. A representation to operate as an estoppel must be plain and certain and not be a mere matter of inference or argument. *Tillotson v. Mitchell*, 111 Ill. 518; *Tash v. Rendell*, 72 Ind. 480; *Mason v. Budge*, 28 W. Va. 650. (3) The alleged representations related merely to a future fact and are unavailable as an estoppel. *White v. Ashton*, 51 N. Y. 280; *Allen v. Rundle*, 50 Conn. 9; *Jackson v. Allen*, 120 Mass. 79; *Turnipseed v. Hudson*, 50 Miss. 439; *Allen v. White*, 51 Vt. 395; *Ins. Co. v. Mowry*, 96 U. S. 544; *Bank v. Todd*, 47 Conn. 191. (4) A promise within the statute of frauds will not be binding by way of estoppel though acted upon. *Brightman v. Hicks*, 108 Mo. 246. (5) The purchaser of an estate who was compelled to give it up from a defect in the title which his attorney had carelessly overlooked was not allowed to recover back the purchase money which he had paid. *Winston v. Pate*, 3 Vesey, 235. (6) Courts of equity will not relieve against the negligence of complainant. *Bryant v. Hitchcock*, 43 Mo. 527; *Perry v. Craig*, 3 Mo. 516; *Chamberlain v. Peltz*, 1 Mo. App. 185. (7) The supreme court will defer to the finding of facts by the trial court. *Bartlett v.*

*Brown,* 121 Mo. 353; · *Taylor v. Crockett,* 123 Mo. 300; *Cox v. Cox,* 91 Mo. 71; *Boyle v. Jones,* 73 Mo. 403; *Hodges v. Black,* 76 Mo. 537; *Sharpe v. McPike,* 62 Mo. 300; *Rawlins v. Rawlins,* 102 Mo. 563. The foregoing principle is especially applicable to the case in hand on the question of plea of payment of the Harwood note interposed by defendant, the burden of proving such plea being always on the party setting it up. *Yarnell v. Anderson,* 14 Mo. 619; *Wear v. Lee,* 26 Mo. App. 105; 13 Am. & Eng. Encyclopedia of Law, p. 253; 2 Greenleaf's Evidence [Redfield's Ed.], sec. 516.

BARCLAY, J.—The present appeal deals with an issue in ejectment, upon which an equitable suit has been engrafted.

The record opens with a preliminary proceeding based on a ·petition (filed, September 17, 1889) containing, first, a statutory count to quiet title to the land in dispute (R. S. 1889, sec. 2092), and, then, a count in equity to enjoin defendants from prosecuting certain actions for unlawful detainer and replevin until the determination of the title to the land.

Mr. Toms, the party in possession, was plaintiff in that petition, and Messrs. Orr, Harwood, Frederick and Oaks were defendants. In due course (upon proceedings not now questioned) a judgment in that cause was reached, commanding Mr. Harwood to bring an action, within a given time, to try the title to the land now in controversy, or be barred from thereafter asserting any claim thereto.

As to the other defendants in the first petition, similar orders were made. Messrs. Orr and Harwood were the only parties who moved in compliance with the order to bring suit. They instituted the action of ejectment which is now here by appeal.

Messrs. Frederick and Oaks became barred under

the provisions of the statutory law touching the quieting of titles (R. S. 1879, sec. 3562, and R. S. 1889, sec. 2092) in accordance with the judgment of the court upon Mr. Toms' petition, inasmuch as they took no steps to further pursue their claim of title to the land.

After Messrs. Orr and Harwood commenced this action (as required by the judgment to quiet title), the former, at an early stage, dropped out, and abandoned his claim, leaving Mr. Harwood as the sole plaintiff.

His petition, filed January 23, 1891, is in the ordinary form for an action of ejectment. The defendants therein named are Messrs. Toms, Aldrich, and Floyd. The first is the real defendant; the others are in possession as his tenants.

The defendants answered, setting up a variety of facts, the substance of which will sufficiently appear in the course of the opinion. The defenses which are chiefly important are, *first*, that the indebtedness secured by the deed of trust (under which plaintiff claims) has been satisfied; and, *secondly*, that plaintiff is estopped, by the facts of the case, to assert the title on which he relies.

We shall not find it necessary to go beyond the first of these defenses.

The cause was heard as one in equity, and the court directed a jury to report findings on ten interrogatories submitted to them at the close of the evidence.

The jury, however, disagreed as to all the interrogatories save one, though they reported their vote on each of them. They agreed on findings as to the damages, rents and profits, and were discharged.

The court then took the case, and ultimately found for the plaintiff for possession with damages and monthly rents. Judgment was entered to that effect;

and from that judgment defendants appealed after the usual steps.

We shall not attempt to give a full review of the evidence; but only such a sketch of it as will make our rulings readily comprehensible.

Some interesting questions of law have been discussed in the briefs; but we believe that the result which the facts warrant can be reached without taking up any of the mooted questions.

The nature of the action, as developed by the pleadings, is essentially equitable. The answer asks for a judgment canceling and discharging the deed of trust which forms the basis of plaintiff's cause of action, and states a chain of facts leading to that end. The chief stress of the answer is on the fact that there is no subsisting indebtedness to give the Rogers' deed of trust (under which plaintiff claims) a standing as an incumbrance on the land. That is the leading issue. All parties have treated it in the trial court, and here, as belonging to the equity side of the court. We shall assume the correctness of that view, without further comment.

As an equity case the facts are properly reviewable on appeal. We have, therefore, examined the whole record and shall endeavor to give, as shortly as possible, our conclusions therefrom.

Both parties claim title from Mr. Oaks; and both claim through deeds of trust executed by him.

The plaintiff is a purchaser under the deed in which Mr. Rogers is named as trustee, which, for the sake of brevity, we shall call the Rogers mortgage.

Mr. Toms is the purchaser and in possession under the other deed of trust, which we shall call the Wilson mortgage.

The principal dates in the history of the titles are these:

*Plaintiff's title:*

January 1, 1883. Rogers mortgage executed and. acknowledged, by Mr. Oaks and wife, to secure a $2,500 note and interest.

June 29, 1883. Rogers mortgage recorded.

August 22, 1889. Trustee's sale and deed under Rogers mortgage to Mr. Orr. Acknowledged same day. (Not recorded at time of trial.)

August 23, 1889. Deed by Mr. Orr to the plaintiff. (Not recorded at time of trial.)

*Defendant's title:*

December 1, 1883. Wilson mortgage by Mr. Oaks and wife to secure a $2,000 note and interest; acknowledged December 20, 1883..

December 25, 1883. Wilson mortgage recorded.

July 13, 1887. Trustee's deed to Mr. Toms under Wilson mortgage; acknowledged same day.

August 3, 1887. Last named deed recorded.

The Wilson mortgage, as all parties concede, was given by Mr. Oaks to secure a valid loan of money, as stated in that instrument.

It contained statutory covenants of general warranty, as well as express covenants against all other incumbrances. It gave no hint of any prior charge or incumbrance. Nor is it claimed that the lender, whose loan was secured by that mortgage, had any intimation or notice whatsoever of the Rogers mortgage, other than the constructive notice imparted by the record of that instrument.

The loan secured by the Wilson mortgage was made by the firm of Wilson & Company, of St. Louis, through negotiations conducted by Mr. Glazier, of Maysville, De Kalb county. The plaintiff and Messrs. Oaks, Frederick, and Orr lived in that vicinity.

Upon the delivery to Mr. Glazier of the secured note (signed by Mr. Oaks) and the Wilson mortgage,

Mr. Glazier paid over the net proceeds of the loan (after deducting commissions) in a check payable to the order of Mr. Oaks. The check was delivered to Mr. Frederick, who, upon Mr. Oaks' indorsement, collected the proceeds of the check, and applied them as mentioned later. The relations of these parties were close. Mr. Frederick carried on with Mr. Glazier the principal part of the negotiations on behalf of Mr. Oaks for the Wilson loan. The plaintiff, an attorney and counselor at law, was cooperating with Mr. Frederick to the same end. Both plaintiff and Mr. Frederick explain this course on the theory that Mr. Oaks was indebted to them, and that they were trying to aid him in perfecting the loan in order to obtain, in that event, repayment of what was due to them. Neither of them, during the negotiations for the Wilson loan, let fall to Mr. Glazier any suggestion of a claim upon the note secured by the Rogers mortgage. That note, signed by Mr. Oaks, was dated January 1, 1883, payable to the order of "A. W. Frederick, J. T. House, and J. F. Harwood" for the sum of $2,500, with ten per cent interest to be compounded, payable twelve months after date.

The sale under the Rogers mortgage was made for the ostensible consideration of $250, as recited in the trustee's deed. But Mr. Rogers, the trustee, testified that the purchaser (Orr) did not pay the purchase price to him; but that he (the trustee) left the deed to Mr. Orr with the plaintiff, at the request of the latter. The plaintiff made an indorsement on the note to the effect that $200.50 were received upon it, by proceeds of the sale, August 22, 1889. But there is no proof that Mr. Orr actually paid $250, or any other sum, for the interest conveyed by the trustee, other than in the form of that credit.

Recurring to the origin of the note on which the Rogers mortgage was based, it is not claimed by plaintiff that the note was given for money then loaned to Mr. Oaks by anyone.    It is admitted by plaintiff that the note was not valid for its full face figures.    But plaintiff insists that it was founded upon certain valuable considerations, of which some account is given.

The statement of these considerations has been furnished on several occasions in the various actions which have arisen between the parties interested in this property, including the case at bar.

Upon a close and careful scrutiny of the evidence we are satisfied that plaintiff and Mr. Frederick, the other payee, must have confused or confounded the disposition of the proceeds of the Wilson loan with the origin of the other mortgage, which was probably drawn with a view to be used to obtain a like loan to that actually made by Wilson & Company.

Thus, plaintiff testified in 1888, in the case of Toms v. Oaks, that part of the fund he advanced for the benefit of Oaks (in consideration of the Rogers mortgage) was paid to a creditor of Oaks in Shelby county, who held what is called the Shelbina mortgage; whereas the books of the bank at Cameron show that a check for the amount of that claim was paid by that bank from the proceeds of the Wilson loan, deposited at Cameron by Mr. Frederick. This is the largest single item (entering into the Rogers mortgage) of which any specific account is attempted.    It amounted to about $600, as plaintiff remembers; or $639.06, according to the check drawn shortly after the Wilson loan reached Mr. Frederick.

Then the latter testified, in the Toms-Oaks case, that part of the consideration of the Rogers mortgage was a payment to Dr. Clagget to relieve the land of a lien or claim the doctor held or represented.    But the

doctor, in the suit at bar, testified that he received his payment from Mr. Frederick after the Wilson loan was effected and from its proceeds.

The jury, that was called to aid the court, agreed on this point, and found the fact to be as stated by the doctor.

Mr. Frederick also deposed that part of the consideration was money borrowed by him of Dr. Hollington to advance to Oaks; and plaintiff declares that another part was several hundred dollars similarly borrowed by him of Mr. House. Both of these alleged lenders, however, seemed unable to recall those loans.

But it is not our idea to spread upon the record all the particular features of the testimony. It will be enough to give our general conclusions therefrom.

One noteworthy fact in the case is that Mr. Frederick, one of the payees in the Rogers mortgage note, received the full proceeds of the Wilson loan, and disbursed the greater part of them in payment of debts of Oaks, and then turned over to Oaks the balance, the exact amount of which is not made clear by the testimony.

Mr. Frederick had agreed with the agent, through whom the Wilson loan was negotiated, to pay off all existing liens with these proceeds. He had personally negotiated for the loan on behalf of Mr. Oaks, who was related to, or connected by marriage with, him.

During the efforts to effect the loan from Wilson & Company, a friendly suit for delinquent taxes was brought against Oaks and other parties by the collector. At the close of the proceedings in that suit, Mr. Frederick became the purchaser of this land at the tax sale. Those proceedings were intended to clear off some old clouds on the title. Mr. Frederick bought with a view to perfect the title in Oaks. Prior to this tax suit, a skeleton abstract had been prepared by the

agents of Wilson & Company.  It was the basis of the steps to clear up the title.  The plaintiff was on intimate terms with Mr. Frederick, and he was attorney for Mr. Oaks in the tax suit as appears by his letter to Wilson & Company's agent, July 9, 1883.  In that letter plaintiff said that he wanted the agent to go on and get judgment against all the parties, so (to quote the exact language) "We can sell and clear up Oaks' title," adding, "and then we want to perfect the loan from you to Oaks."

Plaintiff also made a suggestion in the letter toward correcting an alleged error in giving the name of Mr. Bissell (one of the outside defendants) in the tax suit.

These tax proceedings were ultimately discarded as worthless by all concerned (after Mr. Frederick had bought the land at the sale), because they had been taken before a justice of the peace.  After learning of the ruling of the supreme court (*State ex rel. v. Hopkins*, 87 Mo. 519) as to the want of power in justices to try general tax cases, no attention seems to have been paid by any of the parties to the tax proceedings, or to the judgment or sale therein.  They were treated as void.

But it is noticeable that the tax suit was begun, June 28, 1883, and the Rogers mortgage was recorded the next day, June 29, 1883 (though executed during the previous January).  The plaintiff's letter above quoted was written ten days later, July 9, 1883.

If any indebtedness really existed on account of the Rogers mortgage, at the time the proceeds of the Wilson loan were disbursed, it is extraordinary that Mr. Frederick should have turned over any balance of those proceeds to Oaks (whom plaintiff described in one passage of testimony as "a pauper").  By thus giving away the means of payment, Mr. Frederick would have left himself and the plaintiff unpaid.

The facts developed in the evidence lead us to believe that these parties, the plaintiff and Mr. Frederick, would not be likely to take such a course, had anything then been due on the note payable to them. Both plaintiff and Mr. Frederick well knew that Wilson & Company were negotiating for the loan on the theory that it was to be secured by a first lien, according to the positive representations of Oaks on that point in his written application for the loan.

We believe that when the sale under the Rogers mortgage took place, the note secured thereby did not represent any subsisting indebtedness, so that sale carried no title in equity to the plaintiff, who was fully advised on that subject. Upon this view of the facts, it is immaterial that the Rogers mortgage is prior in legal right (because prior in time) on the record of conveyances.

Mr. House, one of the original payees in the Rogers mortgage note, has disclaimed any and all rights under it. Mr. Frederick is barred of any claim by the earlier proceedings leading to the present action. And plaintiff, the only remaining payee, has not succeeded in giving such definite or satisfactory proof of any solid foundation for the indebtedness, on which his title depends, as to warrant our confirming the finding of the trial court.

On the contrary, after a full review of the evidence, we consider that the trial court as, a court of equity, should have found for the defendants and adjudged a cancellation of the Rogers mortgage and a divestiture of plaintiff's title derived therefrom.

We have not gone into a full analysis of the testimony or given all the reasons that are furnished by the record for the conclusion reached. We have merely sought to outline in a general way the grounds of our decision.

The circuit judgment is reversed and the cause remanded with directions to enter a decree to the effect already indicated.  BRACE, C. J., and GANTT, MACFARLANE, SHERWOOD, BURGESS, and ROBINSON, JJ., concur.

ON REHEARING.

PER CURIAM (BRACE, C. J., and BARCLAY, GANTT, MACFARLANE, SHERWOOD and ROBINSON, JJ.).—A rehearing was granted in order that further consideration might be given to the chief substantial point urged on the motion for rehearing, namely, that the result reached on the first hearing was not sustainable, under the pleadings.

Plaintiff's contention on that point is that the answer pleads payment of the debt secured by the Rogers deed of trust (under which plaintiff claims); that such plea amounts to a concession of the original indebtedness; and that, hence, the question (treated in the first opinion *in banc*) as to what indebtedness was actually secured by the Rogers mortgage is foreign to the merits of the present appeal.

That contention was not lost sight of on the first hearing; but it may perhaps be well to add some observations upon it.

The plaintiff's petition in the action is a short, statutory form in ejectment.

The answer of defendant Toms admits possession, and then proceeds to set up several equitable defenses. It is very elaborate, covering more than ten pages of the printed abstract in this court.

In giving a history of the controversy the answer states that: "Plaintiffs base their claim of title to said lands solely and upon no other grounds than by and through a certain deed of trust, dated January 1, 1883" * * * "to secure to A. W. Frederick, J. T.

House, and J. F. Harwood, one of the plaintiffs, jointly, the payment of a certain promissory note in said deed, described to be for the sum of $2,500, and payable to said payees jointly; and by and through a pretended sale of said premises," etc., "on the twenty-second day of August, A. D. 1889."

It is then charged "that prior to said pretended sale, to wit, about January 1, 1884, the said note, in said deed of trust described, had been fully paid and satisfied and said deed of trust ought in good conscience to have been satisfied of record."

Further along, the answer says that "said deed of trust was no longer a lien upon said premises, and that notice thereof was given to plaintiffs at said pretended sale, * * * by reason whereof defendant says that said deed of trust and pretended sale ought in good conscience to be set aside, canceled, and for naught held."

In other parts of the answer it is said that the proceeds of the loan effected by the Wilson mortgages were used by Frederick (in accordance with his promise to that effect) to satisfy all existing liens or claims against the property, and that the lenders were "led to believe, and did believe, that out of said money said Frederick paid and satisfied all liens then outstanding upon said premises, including such sum, if any, as was due upon the note and trust deed under which plaintiffs herein claim."

Plaintiff filed a reply to the answer; and, at the trial, both parties assumed, by their course of conduct, that a finding upon the plea of payment of the Rogers mortgage involved an inquiry into the amount that was actually due upon that mortgage at the time the sale thereunder was made.

It is familiar law in Missouri that parties are generally to be held bound on appeal by the positions

they have taken in the trial court on controverted points.

Where, for example, there is any fair doubt as to the construction of a pleading, that construction which both parties have given to it at the trial will be taken to be a proper one, unless some rule of law forbids the acceptance of that construction.

The answer charges distinctly that the lien of the Rogers mortgage had been discharged when the sale thereunder occurred. Plaintiff disputed that allegation.

To determine that issue, defendant proceeded, without objection, to show what, if anything, of that indebtedness was due at the time of that sale. The inquiry extended back to the inception of that mortgage. Plaintiff not only made no objection to that inquiry, but, on the contrary, recognized its correctness by giving his own evidence on that identical point. The first question he was asked on the trial in this cause (after stating that he was the plaintiff) was this: "I want you to tell the jury in your own way the origin and the whole history of this debt secured by this deed of trust?" In reply, the plaintiff gave at length his version of the origin of the Rogers mortgage, besides many statements touching matters which led up to that document.

He, as well as the other side, recognized that the issue of indebtedness, at the time of the sale under that mortgage, embraced the subordinate question as to the amount of the original obligation. Plaintiff tried the case on that theory, and we think he was not very wide of the mark in so interpreting the pleadings.

At all events he is in no position to complain now of the admission of the evidence on that question in the trial court or of its discussion in this court.

VOL. 130 mo—16

2.    At the second hearing, plaintiff has started the objection that the bill of exceptions is not properly here for review, because filed out of time.

The motion for new trial was disposed of, and the appeal taken, at the April term, 1892, of the De Kalb circuit court.    At that term an order was entered of record giving defendant "leave to file bill of exceptions during the next regular term of this court."

A record entry in the cause, November 23, 1892, declares that, at that time, defendant presented a bill of exceptions which was signed, sealed, and made part of the record.

The closing lines of the bill, after reciting the leave to file it at the November term, 1892, proceed thus: "And now the defendants, within the time allowed by the court, bring this their bill of exceptions," etc., ending in the usual way, with the date, November 23, 1892, and the authentication by the judge.

The objection advanced is that the record does not clearly show that the bill was filed at the November term, 1892; "for aught that appears, the twenty-third day of November may have been the continuation of an October term of the court," as plaintiff's brief asserts.

If there is any force in the remark just quoted, it goes to prove that the bill was filed in advance of the time it was due.    If on the twenty-third of November the October term was still in progress, the November term must not yet have begun; the bill was, hence, in time.

But the November term of that court in 1892 was, by public law (of which we take judicial notice), appointed to begin on the second Monday of that month (R. S. 1889, sec. 3390); and the formal entry on the court record of the twenty-third of that month indicates

that the bill was allowed at that term.    There is nothing in this objection to the bill of exceptions.

3.    On the merits of the appeal we confirm the views expressed at the former hearing, and direct judgment to be entered as then ordered.    All the members of the court concur, except Judge BURGESS.