ELIZABETH KRUG, Appellant, v. AUGUST F. BREMER, JOHN M. BEYER and OTIS MOSIER, Trustees, and ANNA BREMER, EMMA BEYER and SPRINGFIELD TITLE & MORTGAGE COMPANY.—292 S. W. 702.

Division Two, March 14, 1927.

1. **EQUITY: Declarations of Law.** In an equity suit declarations of law are immaterial and unwarranted, and will be disregarded in the appellate court, which tries the suit **de novo** and decides it according to applicable equitable principles.

**2. EQUITY: Unclean Hands: Must Relate to Particular Ground of Suit.**
The doctrine of unclean hands must relate to the particular matter involved in the suit in equity. The request of an aged widow that the trustee foreclose a second deed of trust on her deceased husband's farm, made in order that she might buy it in and thereby preserve her life estate therein, cannot be applied as "unclean hands" to her suit to have the trustee's deed cancelled for unfairness.

**3. DEED OF TRUST: Sale: Trustee: Agent of All Parties: Fairness.** The trustee who exercises the power of sale contained in a deed of trust is the agent of all parties in interest, and must act justly and fairly to protect all parties concerned. If his conduct is actually unfair, though unintentional and though he is not conscious that he is acting unfairly, the deed made by him in pursuance of the power of sale will be cancelled in the suit of an interested party who has been substantially injured by his unfair act.

**4. ———: ———: ———: Unfairness: Financing Bidder.** The property was encumbered by a first deed of trust for $3,000 and a second deed of trust for $150. The trustee at a foreclosure sale under the second induced the representative of the plaintiff, the widow of the mortgagor, possibly inadvertently, to believe that the first was to be paid from the proceeds of the sale, and accepted his bid for $4,600. The trustee testified that he announced that the property was being sold subject to the first deed of trust, and a controversy arising over what was the fact announced he became excited and angry, and at a second crying sold it to plaintiff for $8,000, and her agent asked for time to get the money, and the trustee afforded him fifteen minutes in which to get it. Being unable to get it, the trustee, between four-thirty and five o'clock in the afternoon of the same day, which was Saturday, cried the sale for a third time and sold it to one of the defendants for $2025. The buyer neither tendered nor offered to tender either money or cash, but another defendant tendered his check for $2025, which the trustee accepted, but never cashed. At a conference with these two on the following Monday, the trustee, as agent for the defendant trust company, loaned to them $5500, secured by a deed of trust on the land, and out of the loan paid both mortgages. Thus he financed the sale, and obtained a commission for negotiating the loan. Other facts show that the attitude of the trustee became hostile to plaintiff after he had first cried the sale, and at the third crying refused to accept a bid from her agent or son. **Held,** that the sale was unfair, and should be set aside.

**5. ———: ———: ———: Partiality: Financing Bidder.** A secret understanding between the trustee and the successful bidders at a foreclosure sale under a deed of trust, to furnish them, for an agent's commission, the money with which to buy the property, if undisclosed at the sale and thereby the successful bidders are given an advantage over other parties in interest, amounts to partiality, and requires the sale to be set aside, where the property could have been sold for a better price.

**6. CONVEYANCE: Undelivered Deeds.** Deeds made by the grantor four days before his death, and found in his pockets after his death, and then mailed, by some unknown person, to the grantees, conveyed nothing, and the grantor died intestate as to the land described in them.

**7. ———: Reformation: Ambiguity.** A condition in a deed conveying land, which is expressed in clear language and whose meaning is certain, cannot be reformed or altered. Where there is no ambiguity in the language, the court will not make one, and evidence intended to give the instrument a different meaning is not permissible.

**8. ———: Condition Subsequent: Breach: Re-entry.** Where the conveyance was made upon condition that the grantee assume the payment of a mort-

gage and pay to the grantor and his wife one hundred dollars per year during their natural lives, the condition was subsequent, and the grantee having failed to perform either condition, the widow of the deceased grantor has the right of re-entry, or in lieu thereof to a suit to divest the grantee of the title, for condition broken.

**9. SUBROGATION: Trustee's Sale: Money Advanced to Pay Mortgage.** Notwithstanding the trustee's deed executed in pursuance to powers expressed in a second deed of trust must be cancelled because of the unfairness of the trustee, a trust company which advanced the money with which both deeds of trust were paid should be subrogated to the rights of the holders of the mortgage notes to the extent of its advancements.

Corpus Juris-Cyc. References: **Appeal and Error**, 4 C. J., Section 2554, p. 660, n. 76; Section 2647, p. 726, n. 17. **Deeds**, 18 C. J., Section 115, p. 210, n. 35; Section 374, p. 360, n. 58; Section 381, p. 364, n. 7 New. **Descent and Distribution**, 18 C. J., Section 232, p. 924, n. 71 New. **Equity**, 21 C. J., Section 173, p. 187, n. 54. **Mortgages**, 41 C. J., Section 1415, p. 968, n. 26; Section 1497, p. 1033, n. 88. **Reformation of Instruments**, 34 Cyc., p. 984, n. 34. **Subrogation**, 37 Cyc., p. 472, n. 92.

Appeal from Lawrence Circuit Court.—*Hon. Charles L. Henson,* Judge.

REVERSED AND REMANDED *(with directions).*

*H. H. Bloss* for appellant.

(1) Where a deed has expressed words of limitations, such as are contained in the deed to the children of Henry and Elizabeth Krug, a life estate is reserved in the grantors or the survivor. Cross v. Hock, 149 Mo. 325; Lewis v. Pitman, 101 Mo. 281; McMillan v. Farrow, 141 Mo. 55; Schoor v. Carter, 120 Mo. 409; Munro v. Collins, 95 Mo. 33; Harbison v. James, 90 Mo. 411; Bean v. Kenmuir, 86 Mo. 666; Cook v. Higgins, 235 S. W. 807. (2) The language of the deeds is unambiguous. Therefore the court had no right to receive evidence intended to impeach the plain terms of the instrument. The instrument itself under such circumstances is conclusive as to what the contract is. Jennings v. Brizeadine, 44 Mo. 332; Harding v. Wright, 119 Mo. 8; Jones v. Shepley, 90 Mo. 307; Hubbard v. Goin, 137 Fed. 832. (3) In all cases where the trustee has been guilty of negligence, oppression, misconduct or fraud, resulting in a sale of the incumbered property below its value, such sale will on timely application to a court of equity be set aside. Hewitt v. Price, 204 Mo. 31, 102 S. W. 647; Givens v. McCray, 196 Mo. 306, 93 S. W. 374; Adams v. Carpenter, 187 Mo. 613, 86 S. W. 445. The trustee is the agent of both debtor and creditor and it is his duty to sell in such manner and at such time as will enable him to realize the highest possible price for the encumbered property. Tatum v. Holliday, 59 Mo. 422; Sumrall v. Chaffin, 48 Mo. 402: Green v. Building Co., 196 Mo. 358; Axman v. Smith, 156 Mo. 286; Hanson v. Neal, 215 Mo. 556. In this case, the bid of Dayton on behalf of the widow, being $4600,

would have netted a much greater return for the encumbered property, than the sum of $2025, and had this trustee given the same privileges to have closed up the transaction that he gave to the buyers with whom he evidently had an arrangement to loan this money through his company, the deal could have been consummated. Even at the third sale of this property when he forbid William Krug from bidding at all, the property would have gone as high as $6000 at that time. Krug had been authorized by Hal Johnson to bid that, and he would take care of the bid to that extent.

*D. S. Mayhew* and *Ben M. Neal* for respondents.

(1) If land is sold under a deed of trust for cash and the debtor bids the highest price therefor, which he is unable to pay, it is not error to sell to the next highest bidder. And generally when the successful bidder withdraws his offer, or is irresponsible, or refuses to pay his bid, while other bidders are still present the sale may properly be reopened, especially if some other person promises a higher bid. So if the mortgagee upon the failure of one bidder to comply with his bid immediately put up the premises for sale again in the mortgagor's presence, who does not object, and sells it for a lesser sum than was previously bid, this is no ground for avoiding the sale. 19 R. C. L. sec. 430, 438. (2) The essential inquiry is as to the fair conduct of the trustee in making the sale. Everything considered the case is one in which the conclusion of the trial judge as to the question of fairness in making the sale ought to be accepted, since he saw and heard the witnesses and was better able to determine what the fact was in that respect. Borth v. Proctor, 219 S. W. 74. (3) Before a deed becomes operative it is necessary that it be actually delivered and actually accepted. Schooler v. Schooler, 167 S. W. 445. (4) Where there is a mutual agreement and by mistake of the scrivener the agreement is not carried out, the deed will be reformed. Whittaker v. Lewis, 174 S. W. 370; Stephens v. Stephens, 183 S. W. 573. (5) Where the question of intent is under consideration, and it is evident from the entire context and circumstances of the deed that through inadvertence the word ''or'' was used instead of the word ''and,'' the word ''or'' will be construed as ''and,'' and vice versa. Willis v. Robinson, 237 S. W. 1033. (6) A reservation of a life estate by a grantor for the life of another dies with the grantor and passes to his estate after his death. Lemon v. Lemon, 201 S. W. 106; Hornbeck v. Westbrook, 9 Johns. (N. Y.) 73; Murphy v. Lee, 144 Mass. 371; Bridger v. Pierson, 45 N. Y. 601; Stockwell v. Couillard, 129 Mass. 231; Stone v. Stone, 141 Iowa, 438, 20 L. R. A. (N. S.) 221.

DAVIS, C.—This is a suit in equity to cancel a trustee's deed, executed in pursuance to a sale under a second deed of trust. The trial court found the issues and rendered judgment in favor of defendants, plaintiff appealing therefrom.

The petition alleges in substance that plaintiff is the widow of G. Henry Krug, who died November 13, 1922, seized in fee simple of a certain one hundred and seventy acres of land in Lawrence County. That said Krug and plaintiff on March 1, 1921, executed a second deed of trust on said land to secure five notes due in one to five years, respectively, aggregating $150, of which trust deed one Groves was trustee, with the right of substituting another, and that he substituted defendant Otis Mosier as such trustee, who conducted the foreclosure sale and executed the trustee's deed. That said sale was had because of default in payment of a thirty-day note due March 1, 1923, and that at said sale defendants Bremer and Beyer bid in and purchased the land for $2025; the petition then alleges fraud, unfairness and oppression on the part of the trustee in his conduct of the sale, and prays the cancellation of the deed executed and delivered by the substituted trustee to Bremer and Beyer, and for other and further relief.

The answer of the defendants in substance admits the execution of the deed of trust foreclosed, the delinquent interest, and the sale on September 15, 1923, by the trustee to Bremer and Beyer, followed by a general denial. The answer further prays affirmative relief relative to the reformation and correction of warranty deeds executed by G. Henry Krug and plaintiff to Anna Bremer and Emma Beyer, their daughters, because of a mistake of the scrivener.

The evidence develops that G. Henry Krug had been for many years before his death the fee owner of the one hundred and seventy acres of land referred to. On March 21, 1921, said Krug and plaintiff executed a deed of trust covering said land to secure five notes of thirty dollars each, due in one to five years from date, respectively, which recited that it was subject to a prior mortgage dated December 28, 1915, for $4000, now reduced to $3000. On December 9, 1922, four days before his death, said Krug, with plaintiff joining therein, executed a warranty deed to each of his six children, respectively, conveying to each a certain portion of the one hundred and seventy acre farm, the respective deeds reciting a conveyance to each child of separate portions and each deed containing the provision following: "This deed is made subject to the life estate of Henry Krug and Elizabeth Krug or the survivor of them and upon condition that the said [specific child] shall pay to the said Henry Krug and in case if his death to Elizabeth Krug the sum of $100 per year during the natural life of the survivor of them. Grantee assumes a mortgage on the above land which he assumes and agrees to pay in the sum of

$550.'' The deed to Anna Bremer was delivered to her immediately after its execution by the grantor and was recorded. The respective deeds to the other five children were retained by the grantor, found in his pocket after his demise and mailed to the respective grantees by some one unknown. Neither Anna Bremer nor the other children paid a proportionate part of the mortgage in the sum of $550, nor paid their mother the sum of $100 per annum as provided by the respective deeds.

Three separate cryings of the foreclosure sale took place on September 15, 1923. At the first crying plaintiff through her agent Dayton bid $4600, which was the final bid and was accepted. Plaintiff, through Dayton, had made arrangements with one Johnson the morning of the sale, for the necessary money. However, after the mortgage had been executed by plaintiff in favor of Johnson or his principal, and the trustee's deed executed by the trustee, a controversy arose between Johnson and the trustee as to whether the foreclosure sale was subject to the $3000 first mortgage, the trustee contending that it was so subject and Johnson maintaining that the trustee had told him earlier in the day that it was not, but that the first mortgage debt was to be paid out of the proceeds of the sale. Johnson testified that the trustee told him that morning that $3500 would take care of the mortgages and that $1000 would cover the probate costs and the debts of the estate. Johnson refused to take a second mortgage and the trustee said that he would give them fifteen minutes to raise the money and if it was not raised, he would sell the place again; that Johnson had $4600 ready to pay, provided the understanding with the trustee had been carried out. At the second crying of the sale Dayton, representing plaintiff, bid $8030, but whether this was subject to the first mortgage or not the evidence fails to show. Dayton testified in substance that he understood the property was not being sold subject to the first mortgage, receiving this information from the trustee. The first bid he made was $4600. The second time he bid $8030, and his statement is that the whole thing went at $8030; that Johnson agreed at one time to loan $8000, if necessary. A controversy again arose as to the bid of $8030, probably because plaintiff could not obtain the necessary cash and partly because the trustee insisted on being paid in cash. The third crying of the sale was had by the trustee, and at this sale he would not let plaintiff or her two sons bid. The sale was had on Saturday, the last sale after the bank had closed, and it was impossible to get cash. Dayton testified that the farm was worth about $11,000. Plaintiff testified that the next spring after the death of her husband, the Beyers and Bremers started to take possession of their parts of the land, and she ordered them off, for she felt that it belonged to her. That her sons Will and John told her it was her land and that she should

not let them have it.  That she and Will wanted the land back and one
of the boys wrote the trustee asking him to foreclose so that they
could buy in; that it was the understanding between them that, if
they bought the land, they were to live on it together and that the
other children were to be out of it.  That she was not trying to get
these other children out of their interest in the farm, for they would
get their part after her death; that she was not going to beat them
out of it.

For defendant, Mosier, the trustee, testified in substance that he
tried to get the folks together to pay the interest and stop the sale,
and that Mrs. Beyer and Mrs. Bremer were willing to let their
mother stay on the land as long as she lived, if she paid the inter-
est and taxes; plaintiff told him that, if Bill wanted it sold, they
would have to sell it.  That the first sale was cried about two-thirty
P. M., and Dayton bid $4600, but that he announced it was being
sold subject to a $3000 mortgage.  That he then signed the trustee's
deed to Mrs. Krug, and Johnson said "all right, we will get the mon-
ey," then going to the bank.  On his return Johnson asked him if
the title to the property was clear and free of debt, and the trustee
said, "No, this is sold subject to a $3000-mortgage."  Johnson then
said, "I won't have anything to do with it; I didn't understand it
that way."  That he then said he would have to sell it for cash, and
notified all that he would sell it again and did so, and that it was bid
off at $4705 after he had announced three times that it was being
sold subject to a $3000 mortgage and the accrued interest; that Day-
ton bid it in and then told the trustee he would have to wait ten or
fifteen days for his money.  The trustee told him he could not do
that, and then told him he would give him until four-thirty to get it
fixed up, or he would sell it again.  That after four-thirty he again
cried the sale and that Bill Krug was the first bidder, but the trustee
refused to accept his bid for the reason that they had fallen down
before; that he refused to let Dayton bid for Mrs. Krug, but did
allow him to bid for Johnson; that Beyer then bid $2025 and it was
sold to him.  That Beyer gave him a check for $2025, but he did not
cash it, taking the check home with him.  Monday morning Beyer
and Bremer came to his office and asked him if he would loan $5500
on the Krug farm; that he told them then he would, subsequently pre-
paring the papers which were signed and put on record; that he paid
off the first mortgage to Groves Brothers, and has the balance of the
money in his possession, which he has held on advice of counsel.  That
he loaned the money to Bremer through a new company that he was
agent for, and for which company he was agent at the time he con-
ducted the sale.

Bremer testified that he did not have the money in the bank when
he gave the $2000 check to the trustee and it was then so understood,

316 Mo.—57.

although Beyer stated that he, Beyer, had sufficient funds, but refused to tell the depository.

Will Krug in rebuttal testified that he bid at the third sale a little over $2000, but stopped bidding because the trustee forbid him on the ground that they did not have the money at the other two cryings; that the trustee didn't ask him where his money was, but just forbid him bidding. Johnson testified in rebuttal that he said he would furnish the money up to five or six thousand dollars, but that he didn't want to go over that because they were afraid they might have some trouble selling the mortgage. Such other facts as we deem pertinent will be stated in the opinion.

I.  As this is a suit in equity declarations of law are immaterial and unwarranted and will consequently be disregarded. In equity
**Instructions.**  suits the fact are reviewable on appeal and the cause triable *de novo*, thus constituting the appellate court the final reviewer and trier of fact as well as the arbiter of equitable principles applicable. [Harwood v. Toms, 130 Mo. 225, 32 S. W. 666.]

II.  We are confronted at the threshold with defendants' contention that plaintiff does not come to a court of equity with clean hands. Whether the contention is well founded gives us pause, and requires that the evidence be epitomized. Plaintiff, at the death of
**Clean Hands.**  her husband, was seventy-one years of age. The evidence shows that she had not been paid the money called for by the warranty deeds, nor had any of the grantees paid the respective portions of the mortgage required by the conditions in the deeds. She was advised by her sons Will and John that it was her land, and to the effect, we may assume, that she had a life estate therein and was entitled to possession. She stated that she and Will wanted the land back and that one of her boys wrote to the trustee asking him to sell the land so they could buy it in. It was understood between them that, if they bought the land under foreclosure, they were to live on it together and the other children were to be out of it; that she was not trying to obtain the other children's interest, for they would get their part at her death. The above is the testimony relied upon by defendants to show unclean hands.

The situation presented is that of an old lady seventy-one years of age, whose children had repudiated the conditions made for her benefit in the warranty deeds by which they obtained title to the land, as she viewed it. Whether the respective deeds were valid as conveyances is immaterial in determining whether she approached equity with clean hands, for we may assume that her lack of train-

ing in legal matters told her nothing regarding the validity or invalidity of deeds. Unable to interpret the effect of the failure of her husband to deliver five of the deeds during his lifetime, or the meaning placed on the conditions therein, she felt that her children were repudiating their agreement to pay her one hundred dollars a year and to care for the mortgages, which were subject to foreclosure. Without a marketable title to obtain funds to pay and finance the mortgage and with the repudiation of their agreement by her children in mind, we have no doubt but that she felt her position in life was precarious and that unless she could make adequate arrangements, she would be left in want and a subject to the charity of others. Her children would do nothing and she found herself unable to remedy matters without obtaining a fee simple title.

We do not think that the maxim "unclean hands" is applicable to the facts here developed. It must relate to the particular matter involved. The question here involved is the cancelling of the trustee's deed and the setting aside of the foreclosure sale for unfairness on the part of the trustee. The assertion that plaintiff's hands are unclean is enveloped in the right of protection for declining years and providing against want, if possible, on her part. The situations are not analogous. On the one hand she questions the trustee's fairness, while on the other her right to protect herself and provide against want or charity is questioned. The question of unclean hands does not arise out of the transaction which is the subject of suit.

In Axman v. Smith, 156 Mo. 286, 57 S. W. 105, regarding an analogous maxim, the court says: "He who seeks equity must do equity. But whilst that maxim is never to be violated, yet it is not so encased in cast-iron rules as to render it the means of injustice in its application. When a suitor comes into a court of equity for redress of his wrongs, the court will grant him relief upon such terms as the right and justice of his cause demands, and will require him to do equity before giving him what he seeks. But the court will not make an unreasonable requirement of him, and will adjust the matter according to the circumstances of the case. And it is only in that sense that the end attained is equity."

In Stegmann v. Weeke, 214 S. W. 134, it is said: "The ancient maxim that he who comes into equity must come with clean hands has been applied to various kinds of cases, but it has its limitations. The particular iniquity which prevents the pursuit of an equitable remedy on the part of the plaintiff must relate to the particular matter in hand, must arise out of the transaction which is the subject of the suit."

In Miller v. Enterprise Canal Co., 142 Cal. 208, 100 Am. St. 115, it is held: "But these maxims have their limitations, and will not

be allowed to work a great injustice and wrong when the alleged unlawful act is entirely unconnected with any transactions between the parties to the suit.''

We do not think the doctrine of unclean hands is here applicable.

III. Was the sale under the deed of trust fairly conducted then becomes the vital question.

The status of the trustee is that of a trusted agent for all parties to the transaction. This trusteeship or agency comprehends not only the maker of the notes secured by the deed of trust, that is the *cestui que trust*, but includes every party to the transaction. When **Unfair Sale.** the trustee exercises the power of sale in foreclosing the deed of trust, it is his duty to act fairly and justly to protect all parties concerned. While it may be, in conducting such sale, that he is not conscious of an intention to act unfairly, yet if his conduct was actually unfair and operated to the injury of the complaining party to the transaction, such conduct, even though unintentional, will not relieve the sale from its taint, nor the unfair act from its consequences.

Unfair acts of trustees in many phases have frequently been the subject of judicial attention. Thus in Hanson v. Neal, 215 Mo. 256, 114 S. W. 1073, the court say: ''Courts · of equity have always watched their proceedings with a jealous and scrutinizing eye; and where it is clearly shown that they have abused their trust, or combined with one party to the detriment of the other, relief will be granted. Not that a sale made by them will be set aside on slight or frivolous grounds; but where it appears substantial injury has resulted from their action, where, in pursuance of their powers, they have failed or neglected to exercise a wise and sound discretion, equity will interfere.''

In Axman v. Smith, supra, it is said: ''A trustee is not the mere agent or attorney for the holder of the note, but he is the trusted agent of both debtor and creditor. In the sale of property under a deed like the one in question, he should use all reasonable effort and methods to make it bring as much as possible, and he should be fair and impartial as between debtor and creditor.''

The court in Green Real Estate Co. v. Building Co., 196 Mo. 358, 93 S. W. 1111, say: ''The trustee in the deed of trust was the agent of both the owners of the property and of the secured debt, and it was his duty to act without partiality toward either of them. He had no authority to do other than to sell the property to the best advantage of the owner of the debt and the debtor, alike, and conduct the sale according to the terms of the deed of trust, and with absolute fairness.''

We interpret the evidence as showing that the trustee, possibly inadvertently, induced Dayton, plaintiff's representative during the

bidding, and Johnson, the tenative lender of the money, to believe that the three-thousand-dollar deed of trust was to be paid from the proceeds of the sale under the second deed of trust. The trustee testified, however, that he stated that he sold the property subject to the first deed of trust. Upon the controversy arising relative to the question, the evidence shows that the trustee became excited and, we may assume, angry. We infer therefrom that the argument became heated and we think the evidence shows that from thence the attitude of the trustee became hostile to plaintiff. At the second crying of the sale the evidence at one place seems to show that Dayton bid $8030 on behalf of plaintiff. The trustee's testimony in that regard shows that it was bid off at $4705. So, no matter which recital is correct, the evidence tends to show that at the second crying of the sale the farm sold for about $8000. Dayton, for plaintiff, asked for time to get the money, stating that he could get it. The trustee, however, afforded him fifteen minutes in which to get the money on condition that he would again sell the property. Plaintiff being unable to procure the money, the trustee, between four-thirty and five P. M. on the same day, cried the sale for the third time and sold the property to defendant Beyer for $2025. Beyer did not tender or offer to tender either cash or check, but Bremer did tender his check for $2025, which the trustee accepted, but never cashed. Bremer stated he did not have that sum in the bank. The Monday following the sale on Saturday, Beyer and Bremer proceeded to a conference with the trustee, who, as agent for the Springfield Title & Mortgage Company, loaned Beyer and Bremer $5500, secured by a deed of trust on the land in question, out of which he retained and paid $3000 on the first mortgage, as well as the amount due on the second mortgage.

Considering the evidence and all the surrounding circumstances, we think that it is shown that the trustee did not sell the land to the best advantage, and that his acts show partiality. Not only the plaintiff, but all the children of Henry Krug, as well as the owner of the notes, were entitled to have the land sell for the greatest amount possible. That the trustee became excited, and, as we are advised by the record, angry and hostile to plaintiff and her sons, is clearly demonstrated, we think. He accepted the unsecured check of one who was not the successful bidder, and refused to accept the check or give others, who had bid higher for the land, a reasonable time to obtain the necessary funds on the ground that the sale was for cash. He stated that it was a cash sale and then failed and refused to require cash payment, but extended credit and later financed the successful bidder, who the record tells was unable to take care of his bid without financial aid. We infer that he had a secret understanding, either before or during the cryings of the sale, with Beyer and Bremer to furnish funds to finance a sale to them. His

undoubted interest was to obtain a commission for negotiating the loan. This information he failed to disclose to plaintiff. While one may choose the persons to whom he lends money, yet there the lending of money to one party gives that party a material advantage over the other party, the act will be held partiality. Moreover at the third crying of the sale, he refused to permit either plaintiff or her son to bid on the ground that it had twice been shown that they were unable to pay cash, and then permitted Beyer to bid and accepted his bid and an unsecured check without ascertaining the ability of the payor to take care of it, well knowing we think that he intended to finance the sale to Beyer. The history of the sale compels us to conclude that, in view of the circumstances related, it was the duty of the trustee, considering the lateness of the hour and the closing of the banks, to have postponed the sale to another day, readvertising, if necessary, so that full and complete justice may have been extended to all parties. We think the evidence shows that the property did not bring the greatest amount probable, due to the fault of the trustee. The sale should be set aside and the trustee's deed to Beyer and Bremer canceled.

IV. We are asked by plaintiff and defendants to construe the clause in the deeds reserving or granting to plaintiff a life estate and further providing for the payment to her of the sum of one hundred dollars per annum and the assumption of the deeds of trust to the extent of five hundred and fifty dollars by the **Deeds Delivered** grantee in each deed. The evidence shows that the **after Grantor's** only deed delivered by the grantor was the deed **Death.** to Anna Bremer. The deeds to the remaining five children were found in the pocket of the grantor at his death, and thereafter mailed, by some one not designated, to each child respectively. Provided these facts are true, and the evidence so shows, the only conveyance of any validity was the deed to Anna Bremer. The deeds to the other five children were ineffective as conveyances and failed to pass title to any one. As to the land represented by such deeds the grantor died intestate, the land devolving and passing according to the inheritance laws and subject to plaintiff's marital rights.

Prima-facie, the deed to Anna Bremer granted a life estate to the grantor's widow, and, in addition, was conditioned on the grantee paying to the widow one hundred dollars a year during her life and **Reformation.** the assumption of the deeds of trust to the extent of $550 by the grantee. A subsequent clause in the deed warranted the title against the lawful claims and demands of all persons whomsoever *subject to the foregoing conditions.*

Defendants in their answer pray the reformation of the deed to Anna Bremer, contending that the words "and upon condition" should be construed "or upon condition." They aver that a deed will be reformed where the mutual agreement is not stated in the instrument, due to the mistake of the scrivener. The only evidence relating to a mistake is found in the testimony of the attorney who drew the deed. He stated in substance that Henry Krug and Gus and Anna Bremer came to his office, Krug stating he wanted some deeds drawn disposing of his farm. No one seemed to know about these deeds except Mr. Bremer and Mr. Krug. Mr. Krug did not know whether the children were going to accept them or not, but he told witness about what he wanted done and witness undertook to do what he thought he wanted done. He wanted these deeds made so that each child could take the land allotted, and he and the old lady could move off the farm. He wanted a condition in the deed if they did not pay a hundred dollars in they would not get the land. We see nothing in the above relation of facts that would justify the reformation of the deed.

However, defendants' principal contention is that the word "and" should be construed "or," as evidenced by the context of the deed, and cite in support of their position Willis v. Robinson, 237 S. W. 1030. We have no quarrel with the ruling in that case, but do not consider it analogous to the facts here involved. As was said in Willis v. Robinson, supra; "Under a cardinal rule of interpretation we are to look to this instrument itself to ascertain its meaning." Evidence of surrounding circumstances is only permissible when the meaning of the context is uncertain or obscure, or an ambiguity appears. In the instant case, no reason for interpretation obtains. The language is clear and certain as well as the meaning. Positive evidence and strained inferences would be necessary to interpret its meaning otherwise than is said in the deed. To permit the engrafting of language to an instrument to alter the clear intent thereof, as shown by the express and certain language used, would be sanctioning the making of legal instruments by the courts, a preposterous assumption of power. [Jennings v. Brizeadine, 44 Mo. 332; Jones v. Shepley, 90 Mo. 307.]

The deed to Anna Bremer being delivered to her by the grantor and her rights therein becoming effective at once, it is evident that the condition was subsequent and not precedent. Having failed to pay plaintiff one hundred dollars per year or to assume **Re-entry.** the deeds of trust, the right of re-entry or in lieu thereof suit to divest her of title for condition broken obtains. However, in settling the rights of the parties in administering the estate, provided that issue is necessary to determine, her remainder interest, if retained, should be treated as an advancement to that extent.

. . V. Inasmuch as defendant Springfield Title & Mortgage Company advanced the money to liquidate the first and second deeds of trust and interest in connection therewith, we think they **Subrogation.** should be subrogated to the rights of the holders of the first and second deeds of trust to the extent of such advancement.

We therefore reverse and remand the cause with directions to the trial court to set aside the foreclosure sale under the second deed of trust and the trustee's deed in pursuance thereof, and to remove Otis Mosier as substituted trustee in said second deed of trust and to appoint a new trustee with all the rights and powers of the original trustee therein. *Higbee, C.,* concurs.

. PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.