[Civ. No. 7307. First Appellate District, Division One.—May 10, 1930.]

ALIDA B. CARR, Administratrix, etc., Respondent, v. MILTON ANDERSON, Appellant.

Edward S. Bell for Appellant.

'Lovett K. Fraser, Sheridan Downey and Morgan V. Spicer for Respondent.

McKENZIE, J., *pro tem.*—The defendant, under the name of Maynard Anslyn, which he stated at the trial was his true name, in the year 1914 married Eva V. Ansyln, plaintiff's intestate. They lived together about ten years and then were divorced. In 1926 defendant, under the name of Milton Anderson, married another woman. The defendant and his second wife separated at a time not disclosed by the record, but prior to his first wife's appearing again on the scene. This second marriage had not been dissolved at the time of the trial. On the 1st of January, 1928, the first wife (plaintiff's intestate) came to defendant's home in Berkeley, where he was living alone in a house which he owned. From the 1st of January, 1928, to March 6th of the same year, when the woman died, the defendant and his former wife lived together in this house without other occupants.

Some time between January 1 and January 27, 1928, plaintiff's intestate and defendant discussed the proposition of conveying the real property of each to the other and of his converting a bank deposit of his into a joint account. The amount of money in bank was five hundred dollars, but there is no satisfactory evidence in the record which shows that this account was transferred to a joint account. There is no direct evidence as to the value of the respective real

properties; however, the record shows that the intestate's real property involved in this action, which is situate in Merced, brings a monthly rental of two hundred dollars per month, but is encumbered with a trust deed to secure an undisclosed amount. It may be inferred that the property has a substantial value. It may also be inferred from the evidence that she had no other property of substantial value. In many respects the record is not comprehensive, but it may be inferred therefrom that the intestate's nearest relatives were nieces and nephews. It may likewise be inferred that defendant's Berkeley property was a modest residence, but of substantial value, and that the residence and bank deposit of five hundred dollars constituted all of defendant's property. The evidence does not disclose any relative of defendant, other than his second wife, who was not living with him, but from whom he had not been divorced.

On the twenty-seventh day of February, 1928, the intestate and defendant went to an abstract office and had prepared two ordinary grant deeds, one from the intestate to defendant of the Merced property and the other from defendant to the intestate of the Berkeley property. Both deeds described the defendant as an unmarried man. These deeds were signed and acknowledged by the respective parties; the defendant then going to his place of employment and the intestate returning to their home with the two deeds and placed them in a drawer where she had a number of her personal papers. Shortly after midnight on March 7, 1928, the defendant on returning to his home from work found the intestate dead in a bathroom. The next day a woman friend of the deceased came to the residence and while there examined the house to ascertain what papers could be found which had belonged to the deceased. In the drawer, where Mrs. Anslyn had placed them when she returned from the abstract office, she found the two deeds in question, together with a number of other papers belonging to the deceased.

The defendant was the only witness who testified concerning the negotiations and understanding concerning the making of the two deeds; and he testified that the agreement was that his deed was to have no effect unless he died before the intestate and the same understanding was had in regard to her deed, and that neither of the said deeds was delivered at the time Mrs. Anslyn placed them in the drawer.

Up to this point both sides agreed that the foregoing are the facts. The controversy centers around an incident that defendant claims occurred at defendant's home on the second day of March, 1928, when the intestate, the defendant and W. F. Sergeant were present. At this time the defendant claims there was a complete delivery of Mrs. Anslyn's deed to him. To prove this fact he relies upon the testimony of himself and Mr. Sergeant, the only living witnesses to what occurred at this time.

At the trial Mr. Sergeant testified that he was manager of the insurance department of a real estate concern in Berkeley; that he called at defendant's home about 10 o'clock on the morning of March 2, 1928; that he did not know Anderson very well, but had met him in November; that he had never seen or heard of Mrs. Anslyn until this morning; that he went to the house to collect a premium that was due for insurance on Anderson's house; that he was in the house for an hour with Anderson and Mrs. Anslyn and that they were in the kitchen all the time, he and Anderson standing and Mrs. Anslyn sitting on a chair; that they engaged in conversation and from this conversation he learned that she owned an auto camp in Merced with which he was familiar and that after some conversation about the auto camp Mrs. Anslyn got up from the chair she was sitting in when she was talking to Sergeant and went out of the room. "Coming back into the kitchen again where Mr. Anderson and I were talking, she said, 'Here is a deed to the property we were talking about at Merced,' and I cannot remember the exact words she said to Mr. Anderson, but she just handed me the deed and I gave it back to her, and she said something to the effect that she was giving this property to Mr. Anderson." At this point counsel for Anderson asked the witness: "Did she hand the deed to him?" Answer: "Yes, she handed him the deed." "And he put it in his pocket?" "Yes." "You actually saw her deliver that deed?" "I saw her." "And heard what she said about giving him the property?" "Yes." On cross-examination Mr. Sergeant testified: That no mention was made of a deed from Anderson to Mrs. Anslyn and there was no mention of any other deed; that he did not know what prompted Mrs. Anslyn to spring out of her chair and get the deed or do what she did and that the only reason he knew of was that they had been discussing the property.

In regard to Mr. Sergeant's testimony concerning the hour of the day he went to Anderson's house, he was asked on cross-examination if he had not told Mr. Fraser, one of counsel for plaintiff, that at the time in question he went to the Anderson house at about 8 o'clock in the evening and he said he had not; that he had a conversation with Mr. Fraser and that he told him about having met Anderson about 8 o'clock in the evening during the month of November. To impeach Sergeant, Mr. Fraser testified that on the 3d of April, 1928 (within a month after Mrs. Anslyn died), Mr. Sergeant told him that the meeting when the deed passed took place at 8 o'clock in the evening; that there was no talk between them about a meeting in November and there was no occasion to talk about a meeting in November.

Concerning what happened at the house when the deed is alleged to have been delivered, the defendant testified that he saw the deed in the drawer where Mrs. Anslyn had placed it and the next time he saw it was when she brought it in the kitchen and "She brought it in there and told Mr. Sergeant she was going to deliver it to me, and he glanced at it and looked over it and handed it back to her, and she presented it to me. She gave it to me. I don't remember what was said. She said it was mine. I give it to you. I put it in my pocket. I think I put it back in the drawer next morning with her papers and my papers." That the deed remained in the drawer until after her death and that Anderson took the deed out of the drawer the day following her death. "Q. Why did you draw these deeds? A. Because she said she wanted to do what was right. She said she wanted to give me that property, as she left me and treated me so mean. Q. What was said about you giving her your property? A. I told her if she done that I am not ungrateful, and I would give her my own home. I owned no other property except about five hundred dollars in the bank." Before the trial Mr. Anderson had been examined under oath before a judge of the Superior Court concerning the property belonging to Mrs. Anslyn's estate, and on cross-examination he admitted having said at that time that he had known Sergeant about two years and that "we both had known him." That at said hearing counsel for plaintiff asked the following questions and he made the following answers: "Q. Now, was it [meaning the deed]

removed from that place after she put it there [meaning the drawer where Mrs. Anslyn had placed the deed] until you removed it after her death, so far as you know? A. No, sir, I didn't meddle with it at all. Q. Had she passed it to you, or handed it to you [meaning the deed] before her death or not? A. Yes, before her death. Q. When did she hand it to you? A. It was somewhere around the 1st or 2d of March. Q. Now, you have testified that she put it in this drawer when she came home from signing it and that it remained there until after her death. Now, do you desire to change that statement? A. There was a man came there, a Mr. Sergeant, and she delivered it to him and gave it to me in front of him. Q. Did you believe that you were entitled to the rent from the Merced Auto Camp, after you got that deed, during Mrs. Anslyn's lifetime, supposing she had lived ten years? A. No, I would not, it wouldn't be mine then. Q. You didn't expect to have dominion and control of that property if she lived? A. No, sir. Q. You expected that she would continue to pay the taxes and pay the insurance, did you? Is that right? A. Yes, sir.''

After Mrs. Anslyn's death Anderson took the deed from the drawer in question and had the same recorded.

The foregoing somewhat lengthy statement is a fair summary of all the relevant and material facts.

This action is brought by the administratrix of the estate of Mrs. Anslyn to cancel said deed on the ground that it was never delivered.

The trial court made findings and rendered judgment in favor of plaintiff, but did not make a strictly direct finding as to how the decision was arrived at. However, there is certainly nothing in the findings or in the record that tends to show that the trial court found to be true the facts testified to by defendant concerning the delivery on March 2d.

From the foregoing facts an action might be prosecuted on two theories: First, that the incident which defendant claims occurred on March 2d never took place, and, second, that even if it did take place, there was not a legal delivery. The allegations of plaintiff's complaint relating to delivery are as follows: Paragraph IV, ''That on or about the 27th day of February, 1928, Eva V. Anslyn made and acknowledged a deed of the property described . . . to Milton Anderson, a single man. That at the same time

and place the said Milton Anderson made and acknowledged a deed to said Eva V. Anslyn of his property . . . , and in said deed he set forth he was a single man, and he acknowledged said deed as a single man.'' Paragraph V, ''That said deed from said Eva V. Anslyn to said Milton Anderson . . . was never delivered to said Milton Anderson or any other person with the intention of becoming absolute or vested.'' Paragraph VI, ''That after the death of said Eva V. Anslyn on the 6th day of March, 1928, the said Milton Anderson obtained possession of said deed from the personal belongings of said Eva V. Anslyn and had the same recorded. . . . '' The defendant answered these allegations by way of general denials and made no allegation concerning how he got possession of the deed. The court found generally that all plaintiff's allegations were true and made a special finding in the following words: ''The court finds that the said deed described in Exhibit A of plaintiff's first cause of action in her complaint was never delivered during the lifetime of the grantor, Eva V. Anslyn, *or at all,* to said defendant or to any other person.'' In addition to the pleadings and findings, an examination of the record discloses that the principal issue of fact urged and contested at the trial centered around the fact as to whether or not defendant obtained the manual possession of the deed from Mrs. Anslyn on the second day of March. It will be noted that plaintiff's complaint contains two paragraphs relating to delivery: Paragraph five is applicable to both theories; paragraph six, though indirect, raises the issue as to whether or not defendant obtained possession of the deed the day he got it from the drawer or on the second day of March, and this fact seems to have been determined by the findings. We therefore conclude that whether or not defendant obtained manual possession of the deed on March 2d was an issue of fact properly before the court, and that the findings determine this fact in favor of plaintiff.

From the foregoing it would seem that before we can pass on the legal effect of the transactions alleged to have occurred on March 2d, we must first determine whether or not under the evidence we can say, as a matter of law, that the court was in error in finding that what defendant claims

happened on March 2d did not occur, because, if the court's finding in this particular is sustained, it would be only of academic interest to try and reconcile the seemingly conflicting cases that counsel present in the case at bar. On one side counsel relies on a line of distinguished cases, of which *Stone* v. *Daily,* 181 Cal. 571 [185 Pac. 665], and *Hotaling* v. *Hotaling,* 193 Cal. 368 [56 A. L. R. 734, 224 Pac. 455], are quite conspicuous. On the other side is presented a number of eminent cases, of which *Mowry* v. *Heney,* 86 Cal. 471 [25 Pac. 17], and *Blackledge* v. *McIntosh,* 85 Cal. App. 475 [259 Pac. 770], are illustrative.

██ Now, coming to the question about determining as a matter of law that this court should say that the trial judge was not justified in finding that the deed was not even manually delivered on March 2d, it is proper to consider what effect would follow if defendant's contention were upheld: Mrs. Anslyn and Anderson had each made a deed to the other of substantially all their properties. Under the law neither would inherit from the other. Anderson claims his deed was not delivered but hers was. If her deed was legally delivered and Anderson had died on the 3d of March his heirs would have taken not only his property, but also the property formerly belonging to Mrs. Anslyn and she would be left with nothing. If the situation was reversed and Anderson had died first and Mrs. Anslyn set up the claim that Anderson's deed was delivered to her, but hers to him was not, the situation would be the same on the other side. If both deeds were delivered it would amount to nothing but an exchange of properties. The defendant testified that Mrs. Anslyn promoted this deal and that she was a smart business woman. She was presumed to know the law; and the court had a right to consider whether or not she would do what defendant claims she did on March 2d. There is a presumption of law: "That a person takes ordinary care of his own concerns." (Sec. 1963, Code Civ. Proc.)

██ According to the defendant's own testimony, the deed in question was in Mrs. Anslyn's possession and kept in a drawer by her up to the second day of March, and after her death it was found in the same drawer. This raises a

presumption it was not delivered. (*Donahue* v. *Sweeney,* 171 Cal. 388 [153 Pac. 708].)

The foregoing summary of facts and other inferences that may be drawn from reading a transcript of the testimony might be well calculated to form in the court's mind an opinion that Anderson's story of what occurred on March 2d was a very strange and improbable one. Then, too, the plaintiff offered evidence tending to impeach both Anderson and Sergeant, and it was for the trial court to weigh this evidence. And, finally, the trial court saw, observed and heard the witnesses, and we cannot say as a matter of law that he was not justified in finding that the story told by Anderson and his witness concerning what happened on March 2d was not true.

Defendant's notice of appeal states that the appeal is from the judgment and order denying a new trial. The only papers in the record concerning a new trial are the notice of motion and the order denying the motion. Furthermore, the defendant makes no point in regard to this order.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Cashin, J., concurred.