STATE EX REL. BARNARD-CURTISS CO., RELATOR, v. DISTRICT COURT ET AL., RESPONDENTS.

(No. 8,255.)

(Submitted November 4, 1941. Decided February 21, 1942.)

[121 Pac. (2d) 419.]

108

*Messrs. Toole & Boone* and *Mr. Ralph J. Anderson,* for Relator, submitted an original and a reply brief; *Mr. Anderson* argued the cause orally.

*Mr. Lewis R. Brown* and *Mr. Harlow Pease,* for Respondents, submitted a brief; *Mr. Pease* argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The relator, Barnard-Curtiss Company, a Minnesota corporation, is defendant in an action pending in the district court of Granite county, brought by C. A. Metcalf, to recover an amount which he claims as owing to him for work done on a dam construction project. Barnard-Curtiss Company had the con-

tract for building the dam and Metcalf had been employed and had done work in clearing the reservoir site of timber and brush. Ernest Maehl had likewise been employed in the same work; both had received pay from Barnard-Curtiss as the work progressed. Each made demand on Barnard-Curtiss for a sum claimed as a balance owing. Each brought separate suit against Barnard-Curtiss for the amount claimed, the basis of each suit being the clearing of the reservoir site, each claiming to have been hired or to have had a contract to do the work.

The amount sued for in each case was about the same, something over $3,000. Both cases were removed to the federal district court on the ground of diversity of citizenship. Metcalf dismissed his case and brought two new actions in the state court covering the same demand as was all first included in one action, each less than $3,000, thus avoiding removal to the federal court. In the case here involved the amount sued for is $2,990.

The *Maehl case* was tried in the federal district court resulting in a verdict and judgment for the plaintiff. On appeal to the circuit court of appeals the judgment was affirmed. (*Barnard-Curtiss Co. v. Maehl*, 9 Cir., 117 Fed. (2d) 7.) Shortly after its affirmance relator paid the judgment.

The *Metcalf case,* in relation to which the present proceeding has been instituted, was carried along and held in abeyance during the time of the disposition of the *Maehl case*.

In the *Maehl case* an attempt was made by the defendant Barnard-Curtiss Company to make Metcalf a party to the action, but this the court did not allow. In the trial of that case Metcalf was called as a witness by the defendant. From his testimony it appeared that he and Maehl had been dealing together for the job of clearing the dam site and reservoir site and that they had both worked on the job.

The relator's answer filed in the *Metcalf case* shortly after its commencement was a general denial, and it also alleged that the work done by Metcalf was not as contractor but as em-

ployee of the relator and for which he had been paid in full. After paying the judgment in the *Maehl case* the relator applied to the court for leave to amend its answer in the *Metcalf case* so as to set up the Maehl judgment and its payment as a defense. In the proposed amended answer, and a supplemental answer, a partnership between the two claimants is alleged and the pleas of payment, *res adjudicata* and estoppel are set up, based on the Maehl judgment and the payment of that judgment, and Metcalf's testimony in the trial of the *Maehl case*. The court refused leave to make the amendment.

In the proceeding here the relator complains that it has been deprived of the right and opportunity to interpose a good defense; that the refusal of leave to amend was without justification and arbitrary; that there is no adequate relief by appeal nor by any other ordinary process, and relator seeks relief from this court by exercise of the power of supervisory control.

Upon relator's petition an order to show cause was issued. In response thereto the district court has made its return setting up as reasons for refusing the leave applied for that the relator had had ample opportunity to present its defense, that its application to amend its answer was not timely made, that the entire affirmative matter contained in the proposed answers is insufficient in law as a defense and incompatible with sworn statements theretofore made in the case by the defendant, that the application was not made in good faith, that granting the leave to amend would be prejudicial to plaintiff, and would not be in furtherance of justice but in contravention thereof, and that it would encourage the production of false evidence by the relator.

Amendments of pleadings after issue joined are, by statute, left to the discretion of the trial court. (Sec. 9187, Rev. Codes.) Liberality in allowing amendments is the rule, it being generally stated that, while an application to amend is addressed to the sound, legal discretion of the trial court, the rule is to allow, and the exception to deny, amendments.

(*State ex rel. Gold Creek Mining Co.* v. *District Court,* 99 Mont. 33, 43 Pac. (2d) 249.)  A simple direct statement of the rule is that, while it is in the discretion of the trial court whether an amendment may be made, the amendment should be allowed unless there is good reason for its refusal.

The liberal policy is general under the Codes as is pointed out in Bancroft's Code Pleading, page 736, section 511, where it is said that:  "The Codes and the courts alike favor a broad liberality, rather than severely technical tendencies on this subject.  Hence it is a rule generally that, in furtherance of justice, amendments to pleadings should be liberally allowed; and courts should be especially liberal toward defendants in allowing amendments."

In considering whether the amendments here sought should have been allowed, the liberal rule must be applied as the law, and the question then is whether the trial court, in refusing to allow the amendments, kept within that rule.

As appears to us, the only ground of refusal that needs to be specially considered is whether the application to amend and file supplemental answer was timely made.  Defendant's answer was filed on November 18, 1939, after the judgment in the *Maehl Case*.  Respondents say that all of the facts which furnish the basis for the allegation of the partnership relation then already had happened, but nevertheless no point was made thereof in the answer then filed.  Also, that relator took no steps toward interpleader or other proceeding to bring the cases together.  That not until February, 1941, after the case was set for trial, did the relator make any point of the matter now sought to be pleaded as an additional defense.  The general complaint is that the relator did not act in good faith; that it resorted to dilatory tactics to delay and avoid trial of the case; that it did not proceed with diligence in seeking to make the amendment, and therefore is not now in position to assert any right in the matter as against the trial court's refusal of leave to amend.

The uncertainty of the relation between the two claimants,

Maehl and Metcalf, and the controversy between them over the matter which was the subject of litigation in the two cases, left the relator in a position where it might well want to have final disposition of the one case before going to trial with the other. Seeking postponement of the trial of the *Metcalf Case* under the circumstances seems to us to have been nothing but the exercise of ordinary prudence.

The judgment in the *Maehl Case* was affirmed on January 4, 1941. It was paid by the relator sometime shortly thereafter, and on February 20, 1941, the application for leave to amend the answer in the *Metcalf Case* was presented to the court. The *Metcalf Case* had then been set for trial for March 3, 1941. The trial date was vacated and the motion for leave was taken under advisement, and the case was so carried along until August 19, 1941, when the court made the order refusing leave to amend.

The factual matter which is the basis of the defense sought to be interposed by the amendments and which has become material to the defendant's case and which needs to be specially pleaded in order to be available as a defense, as interpreted and contended for by the relator, is the outcome and final disposition made of the *Maehl Case*, and the payment of Maehl's demand after it was reduced to judgment affirmed on appeal. The record in the *Maehl Case* certainly makes it appear that the relationship between Maehl and Metcalf in the transaction which is the subject of this controversy was such that the disposition and settlement of the one case may have a bearing on the disposition of the controversy presented by the other case. Just what the relationship between Maehl and Metcalf was it is not necessary that we determine in disposing of the question here presented. It is apparent that they have both sued the relator for labor and services in which both had been engaged and for the doing of which each claimed to have had a contract, and each claiming the right to demand settlement from Barnard-Curtiss Company to the exclusion of the other. This was admitted by Metcalf in his testimony in the *Maehl*

*Case.* Whatever the effect of the trial and final disposition of the *Maehl Case* may be, the relator should be permitted to take full advantage thereof and should have the opportunity to urge it as a defense in the *Metcalf Case.*

The really vital part of all of the defensive matter sought to be interposed by the proposed amendments is the payment made to Maehl. The partnership relation is set up in connection with the plea of payment in order to show the effect of payment as a defense. The estoppel pleaded is to connect the defendant up with the Maehl claim so as to show that its payment may constitute a defense to Metcalf's claim. The defense of *res adjudicata* likewise ties in with the payment made to Maehl. So that the defensive matter sought to be interposed by the proposed amendments all has its basis of materiality in the payment made of the Maehl claim reduced to judgment.

The defense of payment, of course, was not available until payment was made. The relator carried the contest of the *Maehl Case* through a trial in the lower court and appeal from an adverse judgment, and only after the judgment was affirmed by the circuit court of appeals was the payment made. As stated above, the judgment was affirmed on January 4, 1941, and the payment was made shortly thereafter. The relator in the early part of February gave notice of its proposal of the amendments sought and the application to amend came on for hearing on February 20, 1941. It seems to us that the time intervening between affirmance of the judgment and the presensation of the application for amendment was no longer than reasonably necessary for attending to the payment and settlement of the judgment and preparation of the new defensive pleading and notice thereof. It seems to us that the relator proceeded with all due diligence in seeking to amend when the defense had become available.

We can see nothing in the record of any undue advantage taken of the plaintiff nor that the plaintiff can in any way be prejudiced by the amendments proposed. The question of the relationship between the two parties was a matter that

had been ever present in this controversy from its inception, and the effect of the settlement with the one upon the claim made by the other necessarily follows as a proper matter of consideration and cannot be said to be of any surprise when it is sought to be interposed as a defense.

And the fact that the case had been tentatively set for trial at the time the amendments were sought to be made is no good reason for refusing to allow the amendments. The trial date was vacated and the whole matter held in abeyance until August 19 following, giving the plaintiff ample opportunity to prepare for the trial of any new issue raised by the proposed amendments.

Under the well-established liberal rule, and in furtherance of justice, the amendments should have been allowed. (Sec. 9187, supra.) The amendments proposed were material to the defendant's case; the delay in pleading was adequately explained. There was no good reason shown for the refusal, and the district court abused its discretion in not allowing the amendments to be made. (*State ex rel. Gold Creek Mining Co.* v. *District Court*, supra; *State ex rel. Chicago, Milwaukee, St. Paul & P. R. Co.* v. *District Court*, 105 Mont. 396, 73 Pac. (2d) 204; Bancroft's Code Pleading, p. 744, sec. 514.)

The question arises whether the relator has an adequate remedy by appeal for correction of the error, or whether the situation is such as to call for the exercise by this court of its supervisory control. As has been pointed out in the numerous decisions of this court on the question, this power should not be invoked where the litigant may find remedy and redress by the use of some ordinary process. Here the case might be tried on the pleadings as they stand, without the amendments sought to be made, and the point could be reserved for correction of the error on appeal if judgment went against relator. This, however, would be denying to the relator the right of trial of the actual case as contended for in its application to amend. It would be deprived of the right to interpose a legitimate defense, and this because of the re-

fusal of the district court to allow the amendment without any good reason for such refusal. The necessity of going through a trial of the case and thereafter the resort to appeal for correction of the error, and a second trial upon an amended statement of the case, would be imposing a hardship upon the relator which the rule in respect to amendments of pleadings is intended to avoid. The remedy by appeal, therefore, cannot be said to be adequate. The exercise of supervisory control in this matter we think is necessary to protect the rights of the relator as a litigant. (*State ex rel. Gold Creek Mining Co.* v. *District Court; State ex. rel. Chicago, Milwaukee, St. Paul & P. R. Co.* v. *District Court,* supra.)

Let the peremptory writ issue.

Mr. Chief Justice Johnson and Associate Justices Angstman, Erickson and Morris concur.