WALSH, Administratrix, Appellant, *v.* KENNEDY, Respondent.

(No. 8437.)

(Submitted February 24, 1944.   Decided March 25, 1944.)

[147 Pac. (2d) 425.]

552

*Messrs. McCaffery & McCaffery,* for Appellant, submitted an original and a reply brief; *Mr. Joseph J. McCaffery, Jr.,* argued the cause orally.

554

*Messrs J. F. Emigh* and *R. Lewis Brown,* for Respondent, submitted a brief; *Mr. Emigh* argued the cause orally.

558

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Plaintiff, as administratrix of the Estate of Mary Kennedy, Deceased, appeals from a judgment and decree in favor of defendant Harold N. Kennedy in a quiet title suit involving Lot 23 of Block 5 of the Travona Addition to the city of Butte. Both the amended complaint and the cross-complaint are in the usual short form for quiet title actions and allege title in the pleader, and adverse, invalid and inferior claims by the opposing party.

There are three specifications: That the court erred in permitting an amendment of the answer at the trial and in admitting certain testimony hereinafter set forth, and that the evidence does not sustain the findings, conclusions and decree.

Among other things the complaint alleges that Mary Kennedy died on June 27, 1941; that plaintiff was appointed administratrix of her estate; "that at all the times hereinafter mentioned and for more than three years prior to the 27th day of June, 1941, the said Mary Kennedy was the owner in fee" of the property in question. No times were thereinafter mentioned, so that the latter allegation in effect is only "that *for more than three years prior to* the 27th day of June 1941" plaintiff's intestate was the owner. It will be noted that the allegation does not expressly state that she was still the owner on that date or at the time of her death, and while it would seem to mean that she was the owner continuously during the three years and more immediately prior to that date, it will not be necessary to rule expressly upon the point here.

The transcript does not disclose the answer as it originally was; but during oral argument counsel for respondent expressly consented to appellant's attempt to supplement the record in that

respect by means of her reply brief filed in this court. Thus we know that the answer originally said with reference to the above allegation of the complaint: ''Admit that *prior to* the 27th day of June, 1941, Mary Kennedy was the owner of the real property described in paragraph 3 of the amended complaint.'' The final paragraph of the answer, which was not amended, denied each allegation of the complaint not expressly admitted or denied. Certainly the two provisions do not expressly constitute an admission of Mary Kennedy's ownership during the full three year period prior to the date named, and there may be some room for argument whether they constitute an admission of the ownership during any period immediately prior to the date. Since, as above noted, the allegation of the complaint is that plaintiff's intestate owned *prior* to that date, and not that she owned *on* that date or at the time of her death, the answer cannot have admitted the latter. However, in disposing of this appeal it will not be necessary to consider whether, in this state of the pleadings, the complaint stated a cause of action, or whether the answer originally admitted ownership during the period *immediately prior to* that date.

Defendant having testified that about the last of January, 1941, Mary Kennedy delivered to him a deed for the property, plaintiff moved to strike the testimony on the ground that it was not within the issues and was at variance with the pleadings. The court denied the motion but expressed a belief that defendant's answer constituted an admission which would be binding upon him in spite of the evidence. Defendant then orally sought permission to amend his answer; the application was denied without prejudice, but defendant was granted a continuance until afternoon in which to prepare the amendment and a showing for its allowance. At that time he moved to amend the answer so as to deny that Mary Kennedy was the owner of the premises at all times prior to June 27, 1941, and to admit that prior to about January 28, 1941, she was the owner, and to allege that on or about that date she executed and delivered to defendant a deed for the property.

The defendant's motion included his consent that if deemed necessary by the court the cause "may be continued on terms," and was supported by the affidavits of defendant and one of his counsel. The affidavits recited that it was at all times intended to rely upon the delivery of the deed to defendant on about January 28, 1941; that it was always intended to deny that Mary Kennedy was the owner after that date, and that it was believed that the effect of the answer was to do so; that it was never intended to admit that Mary Kennedy owned the property after that time, and that if the answer had the effect of such admission it was by reason of excusable neglect, inadvertence and mistake; that in discussions between counsel for the parties it was stated on numerous occasions that the only question in the case was whether there was an actual delivery of the deed to defendant; that on April 22, 1942, defendant's deposition was taken on his own motion because of his illness and that he then, in the presence of plaintiff's counsel, testified to the delivery of the deed to him about the last of January or the first of February, 1941.

Plaintiff objected to the sufficiency of the showing and renewed her oral objections that the motion was untimely, would change the issues and theory of the case, and "would necessarily require sufficient time within which to meet this new issue." But she did not file counter-affidavits nor otherwise controvert the facts stated.

The court overruled the objections and granted the motion. Plaintiff then asked that her reply be considered amended to deny the new allegations of the amended answer, which was allowed without objection, and the trial then proceeded without any request on plaintiff's part for a continuance.

By the amendment paragraph 3 of the answer was made to read as follows: "That Defendant, Harold N. Kennedy, denies that at all times in Plaintiff's Complaint mentioned prior to the 27th day of June, 1941, the Decedent, Mary Kennedy, was the owner in fee of the premises described in said Paragraph 3 of the Complaint on file herein, but admits the fact to be that prior to on or about the 28th day of January, 1941, the said Mary Ken-

nedy was the owner in, fee of said premises, and in this behalf alleges the fact to be, that on or about the 28th day of January, 1941, the said Mary Kennedy, in her lifetime, did make, execute and deliver to this answering Defendant a good and sufficient. deed to the real property described in Paragraph 3 of said Complaint; that at all times thereafter, and at the time of the death of said Mary Kennedy, Plaintiff was, and ever since has been, the lawful owner of said real property in fee, and denies all other matters and things set forth and contained in Paragraph 3 of said Amended complaint.''

The dissenting opinion seems to construe the amended answer ██ as admitting that in spite of the execution and delivery of the deed Mary Kennedy still owned the property at the time of her death. Since the clause does not begin with either ''admit'' or ''deny'', the first part of it, which is quoted and underlined alone in the dissent, must be construed as meaningless unless meaning is added by the concluding words of the section ''and denies all other matters and things set forth and contained in Paragraph 3 of said Amended complaint;'' if the latter denial does not suffice for that purpose, the first part of the clause remains meaningless and the catch-all denial sufficiently denies the allegation, so far as it appears in the complaint and therefore calls for denial if not a mere conclusion of law. The dissent seeks, apparently, to relate the allegation to the word ''admits'' in the preceding clause, which is brought to an end by a semicolon; but that clause is entirely separate and is mainly a denial only partially qualified by the words, ''but admits the fact to be'' etc., which regardless of punctuation cannot logically be carried over into the next clause.

The wording, the punctuation and the entire purpose of the amendment, all indicate the intent to deny and not admit the conclusion that Mary Kennedy was the owner at her death. Neither the court nor the appellant had any difficulty in understanding its meaning, and in justice to the appellant it should be stated that she has not questioned it, either at the trial or on this appeal. However, if the meaning were as the dissent assumes,

and if the clause constitutes ultimate fact rather than conclusion of law, the pleading must be deemed amended by the testimony of defendant, admitted without objection, as to the delivery of the deed. We may therefore proceed to examine the first, question raised by appellant, whether the permitted amendment of the answer constituted error.

It is of course well established that liberality in allowance of ██ ██ amendments is the rule, that the denial of amendments should be the exception, and that the amendment should be allowed unless there is a good reason for its refusal. (*State ex rel. Barnard-Curtiss Co.* v. *District Court,* 113 Mont. 107, 121 Pac. (2d) 419.) It is equally well settled that even though the trial court's ruling might seem erroneous, it will not be reversed unless the error was prejudicial to the appellant. Under the latter rule it becomes unnecessary to consider any of the questions relative to the propriety of the court's action in permitting the amendment; for it is apparent that the plaintiff was not misled or taken by surprise by the amendment, and that if there were any prejudice to her it was not by reason of the amendment but because of the lack of a continuance, to which defendant had assented in advance but for which plaintiff did not even ask. Certainly the record does not show that if a continuance had been requested and granted plaintiff could and would have produced evidence materially changing the situation; but since the suggestion is made in her brief that a continuance would have enabled plaintiff to supply additional evidence, it is interesting to note that no motion was made for a new trial, although newly discovered evidence would have been a ground for such relief under sections 9396 and 9397, Revised Codes. In any event it is clear that the court cannot be put in error, either for allowing the amendment, which was not in itself prejudicial to plaintiff, or for failing to grant a continuance, which plaintiff not only failed to seek but on the contrary waived by proceeding to trial without objection. The first specification of error must, therefore, be denied.

Another specification of error is that the court erred in ad-

mitting the testimony of Fred Heffron, a disinterested witness, that in May, 1941, Mary Kennedy had said to him that "in the event that anything happened to her she had the proper papers made out leaving everything to Harold Kennedy," and that she had given the papers to defendant. Plaintiff says in her brief:

"The basis of error on which this specification is predicated is that the pleadings, *at the time this question was asked*, admitted that the deceased, Mary Kennedy, was the owner and in possession of the premises in question prior to the 27th day of June, 1941, and the question and answer sought to be elicited and permitted in evidence were not within the issues of the pleadings and objectionable on that ground *at that time*."

"This evidence was not within the issues of the case *at this time* and the objection should have been sustained as contrary to the admission of the defendant in his pleadings."

It is obvious that plaintiff's contention is that the evidence should have been ruled out as not within the issues framed by the answer as it then stood. Assuming that the ruling was erroneous when made, it must be apparent that the error was not reversible, since in any event the evidence became applicable to the issue as later amended, and therefore its consideration by the trial judge cannot have been improper. (*Backer* v. *Parker-Morelli-Barclay Motor Co.*, 87 Mont. 595, 289 Pac. 571.) On cross-examination of this witness the plaintiff brought out the renewed and further testimony that Mary Kennedy told him that "she had prepared the proper papers for Harold N. Kennedy." These questions and answers followed: "And did she say what those papers were?" "Yes, sir." "What were they?" "That she had deeded the property." Having determined that no reversible error was committed by the admission of the evidence, it is unnecessary to consider whether that evidence elicited on cross-examination might have constituted a waiver of any error.

The other specification of error is the alleged insufficiency of the evidence. Plaintiff says: "The basis for this specification of error is predicated on the unsatisfactory and conflicting testimony of the respondent, relating to the purported delivery of

the deed to him and the conflicting and irreconcilable statements of the respondent as to the conversation which was supposed to have taken place at the time of delivery.''

C. S. Jackman, a long established realtor of Butte, testified that on January 28, 1941, at Mary Kennedy's request, he prepared a deed conveying the property to defendant, that on the same day she signed and acknowledged the deed before him and that he completed the notarial certificate and left the deed with her. He testified further that Mary Kennedy "took the deed, and considered that a grant to Harold Kennedy, and she was going to deliver it herself.'' Plaintiff moved to strike the latter testimony, but the motion was denied and no error is specified as to the court's action, whether it was error or not.

John G. Degnan, an assistant cashier of the First National Bank of Butte, testified that prior to February 7, 1941, Mary Kennedy was a depositor in that bank, and that on that day she had the account, then containing $992.83, placed in the names of herself and defendant as joint tenants, payable in full to the survivor upon the death of either. He testified that at the same time Mary Kennedy rented a safety deposit box at the bank.

Defendant testified that Mary Kennedy was the widow of his brother, who died about seven months before her; that they had no children, and that his relations with them were very friendly; that about the last of January, 1941, she handed him the deed and said: ''Here is the deed. Now you can send me to the poor farm any time you want to. This belongs to you now.'' After his answer was amended as above outlined, the deed was admitted in evidence. Defendant's testimony was that he did not know the exact date of the delivery but that it was a day or two after its date—''somewhere around the last of January, somewhere in there; * * * somewhere in around there, between the 28th and 30th, or first of February, I don't know just when it was;'' that it was before the joint account was created on February 7, 1941; that she gave him the safety deposit box key in the latter part of May, 1941.

Plaintiff's contention is that defendant's statement as to the

delivery of the deed was destroyed by the variance between his testimony in court and in the deposition concerning the conversation at the time. In the deposition he stated that when the deed was given to him by Mary Kennedy "about the last of January or the first of February" he opened and read it, asked if she had a safety deposit box and said that that would be the proper place for the deed; that she said she did have one, and that she intended to give him one of the keys and to permit him access to it; that something was said about getting a less expensive one; that they had a safety deposit box but he didn't know in what bank. At the trial he testified that "she handed me this deed as I have stated, and I asked her at that time if she had a safety deposit box. I didn't know; I wouldn't know whether they had one or not. I knew they had one in the past." This is not such a difference as to indicate falsity. Prior to learning expressly that his sister-in-law had a safety deposit box on that day, his knowledge could have been only that in the past she had had one.

Plaintiff cites *Casey* v. *Northern Pacific R. Co.*, 60 Mont. 56, 198 Pac. 141, with reference to inherently improbable testimony, and says: "Under such a ruling this Court would have to conclude that the deceased never did have a safety-deposit box at the time of the supposed delivery of the deed to the respondent, and therefore that such conversation as testified to by the respondent never did take place, * * *."

Plaintiff's contention is not justified. The presumption is that the defendant was telling the truth (sec. 10508, Rev. Codes). There is no evidence that Mary Kennedy did not have a safety deposit box elsewhere before renting one at the First National Bank. And assuming that she had none until February 7th it would not necessarily follow that defendant was not telling the truth, either as to her statement or as to the delivery of the deed. While the defendant's impression was that the deed was delivered shortly after its execution, he expressly said that he did not know the exact date, but only that it was "about the last of January or the first of February," an expression which is commonly understood, and in this instance was obviously intended to mean, not

on precisely the last day of one month or the first day of the next, but during the last part of January or the first part of February, which might well include February 7th.

Plaintiff argues further that defendant's testimony is impeached because he testified in his deposition that on delivery of the deed grantor said that now "he could break her," whereas in court he testified that she said something to the effect that now he could "send me to the poor farm." He did not purport to give her exact words, and in ordinary usage there is not much distinction between being "broke" and being "sent to the poor house," both of which are generally understood to mean impoverishment rather than literal acts of breaking or sending. Certainly her creation of the joint account and her execution and delivery of the deed, and defendant's full assumption of his resultant rights, would deprive Mrs. Kennedy of the money and real estate, and thus impoverish her to that extent. The variation in the words used does not indicate falsity, but shows only an intention to convey the meaning without attempting to state the exact expression or words used.

It is plaintiff's contention that the evidence as a whole indicates that the deed was intended only to pass title after grantor's death and not as of the date of delivery. She argues this from defendant's statement that the apartments and the income from them were to be grantor's as long as she lived, and from the testimony of Fred Heffron that "in the event that anything happened to her she had the proper papers made out *leaving* everything to defendant." The argument is that the circumstances indicate the making of a testamentary disposition rather than an executed conveyance. But Heffron stated definitely that she told him that she had made a deed and had given it to the defendant; and defendant testified that she handed him the deed and said "This belongs to you now." In this state of the record the trial court was clearly justified in finding that Mrs. Kennedy delivered the deed, that she intended to deliver it, and that she understood the effect of her action. The evidence

does not show that she said or did anything even suggesting that she did not intentionally deliver the deed to defendant.

It does show that she was cognizant of her approaching death and that she desired only the occupancy of the property while she lived. It is elementary that the transfer of actual possession is not a necessary element of the conveyance of real estate, and the grantor's continued occupancy is not inconsistent with her alienation of title. Nor is it explicable only upon the basis of a testamentary disposition, any more than is the establishment of the joint bank account, which plaintiff does not attack. Defendant's failure to oust Mrs. Kennedy from the property is no more inconsistent with his title than was his failure to draw all the money from the bank. With regard to the real estate as well as the bank account the record sufficiently shows that the transfer was made in the manner authorized and recognized by law. For a grant of real estate takes effect upon its delivery by the grantor (sec. 6843); and a grant cannot be delivered to a grantee conditionally, but is necessarily absolute and the instrument takes effect thereon, discharged of any condition upon which the delivery is made (sec. 6845). The courts have no power to overrule these statutes, even if they desire to do so.

The record indicates a delivery of the deed, accompanied apparently by a tacit understanding that the grantor should retain possession of the premises while she lived. As pointed out above, such an understanding is not inconsistent with the transfer of title; and whether or not section 6845, supra, might have prevented Mrs. Kennedy's enforcement of that understanding, upon which we express no opinion, it could obviously have no effect to invalidate the delivery. The conclusion is not unjustified, if indeed it is not inescapable, that her continued use and occupancy were to exist under defendant's title and not in derogation of it, and that she was relying upon him in that respect, just as she was relying upon him not to exhaust the joint checking account although he had the opportunity and perhaps the legal right to do so. Certainly defendant's forbearance to exercise the full

right of possession immediately in both respects is no evidence that he did not own the title; it is at least equally consistent with the more normal assumption that he thereby merely justified her confidence in him by giving effect to a tacit, and perhaps unenforceable, understanding. It is obvious that what she was retaining until her death was, not the title, of which she had fully divested herself by the execution and delivery of the deed, but the right of possession, which it was tacitly understood she was to have. The evidence cannot, therefore, logically be taken as proof of an attempted testamentary disposition rather than a completed conveyance.

The dissent refers to subdivision 3 of section 10535, Revised Codes, which provides that parties cannot be witnesses "as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting * * * when it appears to the court that, without the testimony of the witness, injustice will be done." But no such objection was made to the testimony by plaintiff, either at the trial or on appeal, and we cannot put the trial court in error concerning it. Presumably the court's discretion was properly exercised; at any rate, appellant does not question it and we have no reason to do so.

The presumption that a witness has spoken the truth is of course rebuttable and "may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence" (sec. 10508, Rev. Codes). However, in spite of his interest as a party, we do not find any evidence which overcomes the statutory presumption. His testimony is neither inherently improbable nor disproved by his other testimony or by other evidence, so as to put the trial court in error for believing it. On the contrary, his testimony is supported by the circumstances, and indirectly at least, by the testimony of other witnesses. It is apparent what Mrs. Kennedy's intention was, and that she did everything necessary to give it legal effect.

Plaintiff suggests that defendant's statement in his deposition

that if the deed were placed in Mrs. Kennedy's safety deposit box "she would probably feel better in case she wanted to change her mind later on" might somehow alter the effect of its delivery to defendant. Not being Mrs. Kennedy's statement it can not explain away her act of delivering the deed to him, nor indicate that she did not intend to make the delivery. All that it was made for, and all it can possibly explain, was defendant's reason for handing back the deed to Mrs. Kennedy. He further said in his deposition "I couldn't see that it made any difference where the deed was, as long as it was made out to me;" which was of course correct as a matter of law, under sections 6843 and 6845, supra, since the deed had been delivered and was therefore completely effective.

Nor does it appear to be material why defendant returned the deed to grantor after its delivery to him. For section 6847, Revised Codes, provides that "redelivering a grant of real property to the grantor, or canceling it does not operate to retransfer the title." Thus the fact that the deed was given back to the grantor or was found in the grantor's possession after the delivery does not indicate that the property has been retransferred. (*Sylvain* v. *Page*, 84 Mont. 424, 276 Pac. 16, 63 A. L. R. 528; *Cook* v. *Rigney*, 113 Mont. 198, 126 Pac. (2d) 325.) Nor does it disprove the evidence of the delivery, not being necessarily inconsistent with it, either alone or in conjunction with the other circumstances. Consequently it is not material that at the time of grantor's death the deed was in her safety deposit box, whether or not the grantee had equal access to it.

It is unnecessary to cite authorities upon the propositions that the delivery of a deed cannot take place after the grantor's death, and that except under certain circumstances not present here, the owner's title need not be record title; for both propositions are elementary and neither is questioned by any party to this suit.

The judgment is affirmed.

ASSOCIATE JUSTICES ERICKSON, ANDERSON and MORRIS concur.

570

Mr. Justice Adair dissenting:

At the time of her death on June 27, 1941, Mary Z. Kennedy was in the possession of a two-story apartment house located in the six hundred block on Washington Street in Butte, Montana, the title to which property then stood and still stands on the records of Silver Bow county in her name. The apartment house was built in 1916 by Mary Z. Kennedy and her husband, Mike R. Kennedy. It contained four apartments. One of these apartments was occupied by Mary Z. Kennedy as her home from the time the building was erected until the time of her death. The remaining three apartments, Mary Z. Kennedy rented to tenants.

When Mary Z. Kennedy died intestate, the plaintiff was appointed as administratrix of her estate and took possession of same, including the apartment house on Washington Street.

After the death of Mary Z. Kennedy, an unrecorded grant deed to the apartment house was found in a safety deposit box which Mary Z. Kennedy had rented at the First National Bank of Butte and to which no other person had access. The deed purports to be an absolute conveyance; it is dated January 28, 1941, and it purports to be from Mary Z. Kennedy, grantor, to her brother-in-law, Harold N. Kennedy, grantee. The grantee named, Harold N. Kennedy, claims that under such unrecorded deed he became the owner of the apartment house prior to Mary's demise. In view of such claim, the administratrix commenced this suit to quiet title naming Harold N. Kennedy as a defendant therein. The amended complaint contains the customary and ordinary allegations found in suits of this character and alleges "that at all the times hereinafter mentioned and for more than three years prior to the 27th day of June, 1941, the said Mary Kennedy was the owner in fee and in the actual possession of the" described real property.

In the amended answer and cross-complaint which the defendant and cross-complainant, Harold N. Kennedy, filed herein, he "admits the fact to be that prior to on or about the 28th day of January, 1941, the said Mary Kennedy was the owner in fee of said premises, and in this behalf alleges the fact to be, that on

or about the 28th day of January, 1941, the said Mary Kennedy, in her lifetime, did make, execute and deliver to this answering Defendant a good and sufficient deed to the real property described in Paragraph 3 of said Complaint; *that at all times thereafter, and at the time of the death of said Mary Kennedy, Plaintiff was, and ever since has been, the lawful owner of said real property in fee * * *.*" The plaintiff is the administratrix and it would seem that the amended answer and cross-complaint admit that "at the time of the death of said Mary Kennedy, Plaintiff was, and ever since has been, the lawful owner of said real property in fee."

At the trial the plaintiff administratrix supplied evidence showing that Mary Z. Kennedy died on June 27, 1941; that up to the time of her death she possessed and occupied the property; that the record title to the property prior to and at the time of her death stood and now stands in the name of Mary Z. Kennedy; that plaintiff was duly appointed as administratrix of the estate and that as such she had taken possession of the estate and has since collected the rents from the apartments under a special order of the probate court. With this evidence, the plaintiff rested her case.

The defendant and cross-complainant, Harold N. Kennedy, then offered testimony in an attempt to establish that the unrecorded deed had been delivered to him in the grantor's lifetime.

Delivery being an affirmative act, the burden of proving it is upon the person alleging it. Whether or not Mary Z. Kennedy ever made a delivery of the deed in her lifetime, depends upon her intention for intention is the essence of delivery.

To meet the burden which was upon him, the defendant and cross-complainant Harold Kennedy offered the testimony of three witnesses and himself. His first witness, C. S. Jackman, a notary public engaged in the real estate business, testified that on January 28, 1941, at the request of Mary Kennedy he prepared in his office the deed in question and went to Mary's home where she signed it and he took her acknowledgment, after which *he handed the deed back to Mary Kennedy.* There was no other

witness to these acts and no other person was present. From that date on, Mr. Jackman did not see the deed again till at the trial. On direct examination, he testified: "Q. Now, then, at the time she (Mary Kennedy) signed the deed, what was done with the deed then? A. *She kept the deed.*" While the witness testified that when Mary Kennedy took the deed from him she "considered that a grant to Harold Kennedy, and she was going to deliver it herself," yet these were merely the conclusions of the witness and plaintiff's motion to strike them should have been granted. The trial court's error in denying plaintiff's motion to strike is not reversible, however, for the reason that neither the district court nor this court may consider such inadmissible conclusions of the witness as evidence of delivery of the deed. Thus, there is nothing in the testimony of the witness Jackman that tends to prove delivery. There is nothing in the testimony of cross-complainant's next witness, John Degnan, that supplies any evidence of delivery of the deed. Cross-complainant's third witness, Fred Heffron, testified to a conversation which he had at his home with Mary Kennedy in May, 1941, wherein "she did say *in the event anything happened to her* she had the proper papers leaving everything to Harold Kennedy. Q. Did she say what, if anything, she had done with those papers, or who, if any one, she had given any of those papers to? A. Yes. Q. What did she say? A. She had given them to Harold Kennedy." The fact is undisputed that, at that very time (May, 1941), the unrecorded grant deed was then and there in the grantor's possession and custody and under lock and key in her safety deposit box at the bank where it had been since February 7, 1941. The records of the bank disclose that the safety deposit box was not entered by anyone from that date until after Mary's demise and, as no other person had access to the box, the evidence is clear that at the time of the alleged conversation the deed was then in Mary Z. Kennedy's exclusive possession. There is therefore nothing in the testimony of the witness Heffron which furnishes any evidence of delivery. Not a single witness in this case ever saw the deed in the possession of the claimant Harold Kennedy prior to Mary's demise.

The one and only witness to testify to a delivery was the cross-complainant and such testimony coming from an interested party to the action after Mary's voice had been silenced in death is the least satisfactory of all evidence. (Sec. 10535, subdiv. 3, Revised Codes.)

In a deposition which he gave prior to the trial, the cross-complainant testified:

"Q. Now tell me on this day that you state that Mary Kennedy handed you the deed. Will you repeat again just what occurred on that day? A. The only thing occurred was, when I came in she said, or I asked her what was on her mind, and she said 'Well, here's the deed.' She said 'This belongs to you now,' and I opened it up and looked at it, and went thru it, and then I asked her if she had a safety deposit box in the bank, and she said 'Yes.' Well, then, I said 'I think that would be the proper place for it.' I felt this way about it, *that she was to have everything, the apartments were to belong to her as long as she lives, and whatever comes from them was to be hers, and I couldn't see that it made any difference where the deed was, as long as it was made out to me.* Of course, if I had known as much at that time as I know now, we wouldn't be here. * * *

"Q. Then you handed the deed back to Mrs. Kennedy? A. Yes.

"Q. Did you ever again see the deed? A. Yes. I saw it when we went thru the safety deposit box.

"Q. After her death? A. Yes, that's the only time I ever saw it. I was pretty sure it was there.

"Q. And she stated to you at the time that she gave you the deed, Harold, *that she wanted you to have the apartments on her death?* A. Yes. That was what her and her husband had agreed on. * * *

"Q. Mr. Kennedy, on or about the last of January, 1941, or the first of February, 1941, what, if anything, occurred in relation to that property, Lot 23, Block 5 of the Travona Addition, between you and Mrs. Kennedy? A. Well, along about the last of January or the 1st of February, she called up one day and she

said she wanted to see me, and when I went down and went in she handed me the deed to the apartments, and I looked it over, and saw everything was all right, and I asked her if she didn't have a safety deposit box in the bank, and she said she did; and she said 'I intend to give you one of the keys in a few days.' And *I thought, well, that would be the proper place for it, the safety place for it, and she would probably feel better in case she wanted to change her mind later on. So I gave her the deed, and she put it in the safety deposit box.* * * *

"Q. Well, to obviate the possibility the question is improper,. I will ask you, Mr. Kennedy, if Mary Kennedy, in her lifetime delivered to you the key of her safety deposit box? A. *At the time she handed me that deed, she said she was going to give me a key too.* She had a safety deposit box she was paying $6.50 for and she was going to try and get a cheaper one, and it seemed like she didn't succeed in getting one for less, and along about the last of May, I think it was, she gave me the key to the safety deposit box, and said the first time she went up town or something, *she was going to fix it to make me jointly in the safety deposit box which she never did.* * * *

"Q. It's a fact, is it not, Harold, that you had discussed the disposition of her property with her prior to the time she called you to make the deed? A. Well, yes, she had told me that on two or three different occasions, and she also told my wife, I believe, the same thing, that they had, regardless of what else took place, that he wanted, *that Mike wanted me to have the apartments after; that is, if she went first.* * * *

"Q. And did you ever discuss that with Mike before his death? A. No. That's something we never—we knew all the time if he went first he certainly would leave everything to her. * * * The only thing she said was 'Here is the deed, this belongs to you now. *That's what your brother and I had agreed on, that you were to have this after I was gone.*"

The cross-complainant's own testimony shows that it was Mary Z. Kennedy's intention "that she was to have everything, the apartments were to belong to her as long as she lives, and what-

ever comes from them was to be hers;" that she said to cross-complainant "you were to have this *after I was gone*" and that he thought Mary Z. Kennedy's safety deposit box, to which he did not have access "would be the proper place for it [the deed], * * * *and she would probably feel better in case she wanted to change her mind later on.*" Thus did the grantee cross-complainant testify to the grantor's control over the deed and to her right of recall "in case she wanted to change her mind later on" which plainly indicates her intention that the instrument should not take effect as a conveyance until *after* she was gone, i. e., until *after* her death. This being the grantor's intention and it being so understood by the grantee, there was no effectual delivery of the deed and no title passed to the grantee in Mary's lifetime. It cannot be unfair to the cross-complainant to deal with his case from the standpoint of his own statements. (*Cullen* v. *Peschel,* 115 Mont. 187, 142 Pac. (2d) 559; *Morton* v. *Mooney,* 97 Mont. 1, 33 Pac. (2d) 262; *Putnam* v. *Putnam,* 86 Mont. 135, 282 Pac. 855.)

The law has long been well settled "that delivery is not complete until the grantor has so dealt with the instrument as a means of divesting his title as to lose all control over it and place it beyond the right of recall. It is required that the grantor shall unequivocally indicate it to be his intention that the instrument shall take effect as a conveyance of property in order to have it produce that result." (*Carnahan* v. *Gupton,* 109 Mont. 244, 96 Pac. (2d) 513, 515; *Miller* v. *Talbott,* 115 Mont. 1, 139 Pac. (2d) 502; *Deming* v. *Smith,* 19 Cal. App. (2d) 683, 66 Pac. (2d) 454.) There can be no valid delivery of a deed after the grantor's death. To be made operative after the grantor's death, the deed must have been made effectual during the grantor's lifetime. (Secs. 6843, 6845, Rev. Codes, 1935; *Carnahan* v. *Gupton,* supra; *Miller* v. *Talbott,* supra.) There can be no delivery by a dead hand. (*Munpower* v. *Castle,* 128 Va. 1, 104 S. E. 706; *Kenney* v. *Parks,* 125 Cal. 146, 57 Pac. 772; *Miller* v. *Brode,* 186 Cal. 409, 199 Pac. 531; *Scott* v. *Cornell,* 295 Ill. 508, 129 N. E. 94; *Krug* v. *Bremer,* 316 Mo. 891, 292 S. W. 702.)

In 1 Jones Commentaries on Evidence, 2d Ed., section 193, at page 321, the author says: ''In the absence of all evidence to the contrary, it seems clear that the possession of a deed by the grantor at his death is evidence sufficient to overcome any presumption of delivery arising from the mere existence of the executed instrument.'' (Also see *Alward* v. *Lobingier,* 87 Kan. 106, 123 Pac. 867; *Wiggins* v. *Lusk,* 12 Ill. 132; *Weigand* v. *Rutschke,* 253 Ill. 260, 97 N. E. 641; *Parrott* v. *Avery,* 159 Mass. 594, 35 N. E. 94, 22 L. R. A. 153, 38 Am. St. Rep. 465; *Donahue* v. *Sweeney,* 171 Cal. 388, 153 Pac. 708; *Carr* v. *Anderson,* 105 Cal. App. 570, 288 Pac. 117; *Allenbach* v. *Ridenour,* 51 Nev. 437, 279 Pac. 32; *Butts* v. *Richards,* 152 Wis. 318, 140 N. W. 1, 44 L. R. A. (n. s.), 528, Ann. Cas. 1914C, 854.)

When the cross-complainant was on the witness stand he was shown the unrecorded deed and then on his direct examination the following occurred: ''Q. Have you ever seen that exhibit before today? A. Yes. Q. When and where did you first see it? A. The first time I saw it was when she handed it to me along about the last of January, *and she said 'Here is the deed. Now you can send me to the poor farm any time you want to \* \* \*.' ''* Plaintiff's attorney interrupted and moved that the answer be stricken but the motion to strike was denied by the trial court which observed that any evidence ''contrary to the allegations under an admission amounts to nothing.'' The question asked did not call for the oral communication attributed to the deceased by the cross-complainant in his last answer above. Furthermore as to such communications the lips of Mary Z. Kennedy are forever sealed in death and, the legislature, in its wisdom, has sealed the lips of the cross-complainant in this action and rendered his testimony incompetent by the enactment of the ''Dead Man's Statute'' which provides: ''The following persons cannot be witnesses: \* \* \* 3. Parties \* \* \* to an action \* \* \* prosecuted against an \* \* \* administrator upon a claim or demand against the estate of a deceased person, as to the facts of direct transactions or oral communications between the proposed witness and the deceased, excepting when the \* \* \* administrator

first introduces evidence thereof, or when it appears to the court that, without the testimony of the witness, injustice will be done.'' (Sec. 10535, subd. 3, Rev. Codes.) Here the administratrix did not first introduce evidence as to the facts ''of direct transaction or oral communications'' nor did it appear that without such testimony ''injustice will be done.'' Clearly the testimony should have been stricken. It was incompetent and prohibited by statute. It amounts to nothing.

The facts of the instant case are quite similar to those in *Alward* v. *Lobingier,* supra, where, subsequent to its execution, the grantor handed the deed to the grantee and asking the latter to read it, told her that she (the grantor) desired to retain the deed in her own possession so she might continue to reside on the property until her death. After this the grantor told numerous and divers persons she had deeded the property to the grantee. When the grantor died the deed was among her papers. In holding that there was no delivery the court said:

''The mere handing of the deed to the grantee, with a request that she read it, did not amount to a delivery. In the same manner, a testator might hand a will to a devisee to be read. The grantor's statement that she desired to retain the deed in her own possession, so that she might continue to reside in the property until her death, appears to have been given as a reason for not delivering the deed, rather than as a reason for its being returned to her custody after a delivery had taken place. At no time did she relinquish the right to the immediate control of the deed; and wherever a manual delivery is relied upon this is a conclusive test.

''* * * Mrs. Alward doubtless fully intended that at her death the property should pass to Mrs. Lobingier by the deed. She may not have considered whether she had the power to prevent this. She may have harbored no thought of changing her plan concerning the disposition of the property. But she is not shown to have taken any step that would have given Mrs. Lobingier a legal right to have forbidden the cancellation of the deed. She not only had its actual possession, but she held it in her own right,

and without having made any agreement as to its disposition. Her statements that she had deeded the property to Mrs. Lobingier signify nothing further than that she used that phrase to describe what had taken place, which did not, in law, actually involve a passing of the title. (*Worth* v. *Butler,* 83 Kan. 513, 519, 112 Pac. 111, 113.)''

Not only is there no competent evidence in this case of any delivery, but cross-complainant's own testimony shows that it was the grantor's intention that the instrument should not take effect as a conveyance of her property until after she was ''gone'' and she made it plain to cross-complainant she intended that ''the apartments were to belong to her as long as she lives.''

In other words, it is plain from the above testimony that the property together with the full use and enjoyment of it should belong to Mary so long as she should live and that only after her death and when she could have no further possible use for same was the apartment house to become the property of her brother-in-law. Thus Mary intended to make testamentary and not present disposition of her property. To accomplish this, under the statutes, she was required to make a will. This she did not do and, in my judgment, the evidence is wholly insufficient to show any delivery of the deed to Harold N. Kennedy in the lifetime of Mary Kennedy with the intent that title should then and there pass to him. In my opinion, the undelivered unrecorded deed was and is wholly ineffectual to pass title to the property. The apartment house belonged to Mary Kennedy in her lifetime. It belonged to her on the day of her death. Thereafter the title passed to her estate of which the plaintiff is the duly authorized representative. The judgment should be reversed with directions to enter judgment for the plaintiff administratrix.

Rehearing denied April 18, 1944.